In the Matter of the Application of THE CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Lands for the Purpose of Establishing a Public Beach in the Borough of Queens.

NEPONSIT PROPERTY OWNERS' ASSOCIATION, INC.,
Appellant.

(Argued October 3, 1935; decided November 19, 1935.)

*Ralph S. Hein, Alex M. Burnham* and *Bertram Sommer* for appellant. The damage parcel is not burdened by easements in favor of the city. (*Nichols Copper Co.* v.

*Connelly,* 208 App. Div. 667; *Matter of Starr Street,* 73 Misc. Rep. 380; *Matter of City of New York [East 177th St.],* 239 N. Y. 119; *Johnson* v. *City of Niagara Falls,* 230 N. Y. 77; *Matter of City of New York [Roosevelt Ave.],* 186 App. Div. 457; *Smith* v. *Smythe,* 197 N. Y. 457; *People* v. *Underhill,* 144 N. Y. 316; *Matter of City of New York [Saratoga Ave.],* 226 N. Y. 128; *White* v. *Moore,* 161 App. Div. 400; *Russell* v. *Church,* 118 Misc. Rep. 473.) Ownership of the damage parcel and of the abutting and contiguous lots being in appellant and its members, the award to it must be substantial and not nominal. (*Matter of City of New York [Northern Blvd.],* 258 N. Y. 136; *Matter of Rapid Transit R. R. Commrs.,* 197 N. Y. 81; *Matter of City of New York [Roosevelt Ave.],* 186 App. Div. 457; *Matter of City of New York [Sedgwick Ave.],* 213 N. Y. 438; *Mayne* v. *Nassau Electric R. Co.,* 151 App. Div. 75; 210 N. Y. 607.) Very substantial damage having been sustained by appellant and its members, an award adequate to compensate them therefor should have been made. (*Matter of Simmons,* 130 App. Div. 350; 195 N. Y. 573; *Matter of Niagara, Lockport & Ontario Power Co.,* 133 Misc. Rep. 177; *Matter of City of New York [Main St.],* 216 N. Y. 67; *Matter of Waterfront in Tompkinsville,* 219 App. Div. 382; *Matter of City of New York [West 10th St.],* 267 N. Y. 212; *Matter of City of New York,* 227 N. Y. 119; *Flynn* v. *N. Y., W. & B. Ry. Co.,* 218 N. Y. 140; *Matter of City of New York,* 193 N. Y. 117.)

*Paul Windels, Corporation Counsel (Joseph F. Mulqueen, Jr., Anson Getman* and *Reuben Levy* of counsel), for respondent. Appellant's sole interest in the damage parcel was the naked, barren fee title. A nominal award therefor was wholly proper. (*Phillips* v. *West Rockaway Land Co.,* 226 N. Y. 507; *McKenna* v. *Brooklyn Union El. R. R. Co.,* 184 N. Y. 391; *Drucker* v. *Manhattan Ry. Co.,* 213 N. Y. 543; *Matter of City of New York [Northern Blvd.],* 258 N. Y. 136; *Matter of City of New York [Carroll*

*St.*], 137 App. Div. 39; *People ex rel. Poor* v. *Wells*, 139 App. Div. 83; 200 N. Y. 518; *Matter of City of New York* [*West 10th St.*], 267 N. Y. 212; *McGovern* v. *City of New York*, 229 U. S. 363; *United States* v. *Chandler-Dunbar Co.*, 229 U. S. 59; *Boston Chamber of Commerce* v. *Boston*, 217 U. S. 189; *Matter of Adams*, 141 N. Y. 207; *Roberts* v. *City of New York*, 295 U. S. 264.) The value of the fee title of the parcel is purely nominal whether it be affected by public easements or burdened as in this matter with private easements. The result can be a nominal award only. (*Matter of City of New York* [*Harrison Ave.*], 267 N. Y. 64; *Matter of City of New York* [*Northern Blvd.*], 258 N. Y. 136; *Matter of City of New York* [*Decatur St.*], 196 N. Y. 286; *Matter of City of New York* [*Johnson Ave.*], 135 App. Div. 630; 198 N. Y. 505.)

LEHMAN, J. The city of New York has brought condemnation proceedings to acquire land for the purpose of establishing a public beach or park in the borough of Queens. Damage Parcel No. 2, as shown on the condemnation map, is a strip of land along the water front. Until the city took that parcel, title was vested in Neponsit Property Owners' Association, Inc. An award of six cents damages was awarded to "unknown owners" for the taking of this parcel. The appellant has appealed from that award. The problem presented upon this appeal is novel.

The appellant has established that it was the record owner of the fee of the property. It acquired title by deed from Neponsit Realty Company dated January 13, 1920, and recorded on May 10, 1920. That deed conveys to the appellant "All that certain plot, piece or parcel of land, situate, lying and being at Neponsit Beach, West Rockaway in the Borough of Queens, City of New York, County of Queens and State of New York, and known and designated as ' Ocean Park ' on a certain map entitled ' Section 1, Map of Neponsit Beach, West Rockaway,

property of Neponsit Realty Company in the 5th Ward, Borough of Queens, New York City, surveyed January, 1910, by John Middleton, filed the Twenty-third day of January, 1911, as Map 293.'

" Subject however to an easement or right of way in favor of all owners of all lots on said map to use and enjoy the said beach designated as ' Ocean Park ' on said map and to pass and re-pass thereon and thereover, and to make use of such beach for bathing and other recreations and sports but not for commercial uses and purposes."

The land shown on the map, referred to in the deed, is subdivided into thirty-four blocks comprising over 1,600 lots intersected by streets. The portion of the map designated " Ocean Park" and conveyed by the deed to this appellant, is Damage Parcel No. 2. The entire tract owned by Neponsit Realty Company and shown on the map was developed by it as a restricted residential area. It conveyed separate lots shown on the map and each deed contained covenants by the grantee and granted easements in favor of the grantee. The easements so granted are " the right in common with all owners of all other lots on said map to use and enjoy the said beach designated as ' Ocean Park ' on said map and to pass and re-pass thereon and thereover, and to make use of such beach for bathing and other recreations and sports but not for commercial uses and purposes.

" Together with the right of access over the surface of the street, only the ownership of which is hereby not conveyed, and all franchise rights in the streets and avenues shown on said map are hereby reserved to the party of the first part."

It is not disputed that the value of the damage parcel, if unincumbered by any easement, would be great. At the time of the taking it was incumbered by easements or servitudes attached to several hundred dominant tenements. To that extent, ownership of the fee and right of enjoyment are divided. The city takes the land free

from any easements therein. It must pay compensation
for what it takes. It must compensate each owner of a
dominant tenement for the value of the easement extin-
guished. Ordinarily that value would be represented by
the difference between the value of the dominant tene-
ment before and after the taking. (*Matter of City of
New York* [*West 10th St.*], 267 N. Y. 212.) It must also
compensate the owner of the fee for the value of the fee
burdened, as it then was, by servitudes or easements.
The sum of those values may at times approximate the
value of the unincumbered fee. It may be much less.
Indeed, the sum of these values may be only nominal.
That is true when the city condemns, for a public street,
land which has been used as a private street in which the
abutting owners have easements of light, air and access,
and the owner of the fee is not, also, the owner of abutting
property. In such case the ownership of the incumbered
fee has no substantial value. It cannot be used for any
purpose which will bring to the owner either profit or
enjoyment. It is a burden rather than a benefit, and
its taking relieves the owner of the burden. (*Matter of
City of New York* [*Northern Boulevard*], 258 N. Y. 135,
and cases there cited.) Nor are the owners of the abutting
property substantially damaged, in such case, by the
extinguishment of their private easement in the private
street, for they acquire, at the same moment, a public
easement in a public street " that in every regard and to
full degree replaced what the city had taken." (*Matter of
City of New York* [*Decatur St.*], 196 N. Y. 286, 290.) In
any event, be the damages large or small, which are caused
to owners of easements and to the owner of the fee by the
taking of the land, the value which must be paid is the
value of what is taken, in its condition at that time, not
the value which it would have, if it were held as an
unincumbered whole. (*Matter of City of New York* [*West
10th St.*], *supra; Boston Chamber of Commerce* v. *City of
Boston*, 217 U. S. 189.)

The rule that land taken must be valued in the condition in which it is at the time of the taking must be applied here. The damage to the owner of the fee is the value of the land subject to existing incumbrances; the damage to owners of easements in the land is the value of what they lose by its taking. Only the owner of the fee has made any claim for damages here, and we consider, primarily, the damages which the owner of the fee has suffered. We disregard as immaterial the fact that the award of nominal damages was made to " unknown owners " though the appellant proved conclusively its title to the fee and its right to an award of some damages, even though such damages might only be nominal. The appellant makes no claim that it is substantially aggrieved by the form of the award, unless it is entitled to substantial damage.

If the incumbrances upon the fee do not exclude a beneficial use of the fee by its owner, then the owner of the fee is entitled to more than nominal damages. Even the ownership of the fee of land, dedicated as a public street, has beneficial value, where the fee owner also owns adjoining property; for ownership of the fee gives him " the right to defend against and to enjoin a use of, or an encroachment upon the street, under legislative or municipal authority, for purposes inconsistent with those uses to which streets should be, or have been ordinarily subjected " and which might damage the adjoining property. (*City of Buffalo* v. *Pratt*, 131 N. Y. 293, 299; *Matter of City of New York* [*Decatur St.*], *supra*.) The ultimate question in each case is not whether the land taken is burdened by servitude, but rather the value of the land for any use consistent with the burden upon it. Here the land was burdened by the right of each owner of a lot shown on the map in " common with all owners of all other lots," to use and enjoy the beach for passage, bathing and other recreation and sports, but not for commercial uses or purposes. If the owner of the fee could

license or invite others to use it in the same way, then it is plain that the ownership of the fee would have a very substantial value. We construe the language of the easement differently. By the grant of a right " in common with all other owners," the intent to create a private beach for the enjoyment of the lot owners only, from which the rest of the world would be excluded, seems clear. (Cf. *People ex rel. Poor* v. *Wells*, 139 App. Div. 83; affd., 200 N. Y. 518.)

Under that construction, even if the value of the bare fee might be nominal, the value of the right of the lot owners would certainly be substantial. Easements of light, air and access in a public street may " in every regard and to full degree " replace a similar easement in a private street; but a right to use a beach or park in common with a limited group of neighbors is obviously not replaced " in every regard and to full degree " by a right in common with all other members of the public to enjoy a public beach or park. Argument then that the nominal damages awarded constitute sufficient compensation for the taking of the beach, is, on its face, unsound.

The city does not, on this appeal, rely on that argument. It urges that the question of whether the right granted to owners of lots to use the beach has value is academic, in this proceeding, since none of these owners have made any claim here, and that the only question before us is whether the appellant is entitled to substantial damage for the taking of land which is so incumbered by easements that it cannot be put to any beneficial use by the owner of the fee. The city assumes that the appellant in this case is only the owner of the bare fee and that ownership of the fee and right of beneficial use and enjoyment have been completely severed.

In truth that separation is in some aspects, at least, formal rather than actual. In the conveyance of each lot shown on its map, the Neponsit Realty Company provided that the property so conveyed " shall be subject

to an annual charge in such an amount as will be affixed by the party of the first part [the grantor], its successors or assigns, not, however, exceeding in any year the sum of $4.00 per lot, 20 x 100 feet. The assignee of the party of the first part may include a property owners' association which may hereafter be organized for the purposes referred to in this paragraph and in case such an organization is organized, the sums in this paragraph provided for, shall be payable to such association." The appellant Neponsit Property Owners' Association was organized for the purposes referred to in these deeds.

Its certificate of incorporation states that " the objects for which said corporation is to be formed are as follows: to preserve the settlement known as Neponsit on Rockaway Beach, in the County of Queens, City and State of New York, as a highly restricted, well kept and properly maintained suburban home community; to take all reasonable and lawful means for the improvement and betterment of said Neponsit; to take all necessary and lawful means of maintaining and enforcing the restrictions upon said property; to acquire title to and hold such portions of said property, including the beach front, as may be granted to it by deed or otherwise, for the benefit of all property holders in said Neponsit, and to make such use of such property so acquired by it as shall be for the best interests of the property holders at said Neponsit; to acquire such property, property rights and claims as may be transferred and assigned to it by the Neponsit Realty Company, Inc., or otherwise."

Its by-laws provide that " all record holders of lots at Neponsit, Rockaway Beach, City and State of New York, are by that fact, members of this association." Perhaps, as the city urges, no record holder of a lot would become a member without his consent. Whether he consented or not, each grantee of a lot was by covenant charged with the obligation to pay an annual sum for the upkeep of the beach, and it appears that there were no

other membership charges; and each lot owner was entitled to all the benefits of membership. Indeed, it appears without dispute that in accordance with the by-laws each lot owner was considered as a member of the organization and accorded all the rights of a member. In effect, therefore, the appellant membership corporation is a device used by the owners of the dominant tenements to hold, and jointly manage and control, the fee in which they have a common right of enjoyment.

It may be difficult, or even impossible, to classify into recognized categories the nature of the interest of the membership corporation and its members in the land. The corporate entity cannot be disregarded, nor can the separate interests of the members of the corporation. The easements still remain appurtenant to the separate dominant tenements, though title to the fee is vested in a membership corporation controlled by the owners of the dominant tenements. The fee held by the corporation is still burdened by these easements, and cannot be transferred or used except subject to such easements. Even if the title of the land, in the corporation, be treated as held in trust for its members, the corporation cannot be regarded, in true sense, as a trustee of the easements which burden the land, for they are inseparable from the tenement to which they are appurtenant, and have never been conveyed to the appellant. None the less, the membership corporation does hold the land for the use of those who are accorded membership rights, under its by-laws. It was formed for their benefit, and when it uses the land for their benefit it carries out the purpose for which it was organized. Others may not share in its use. That is true of property held by other membership organizations, like clubs, which are formed for the benefit of a restricted group. So long as the title remains in the appellant, and the appellant continues to use the land in the manner it has heretofore used it, those who own the dominant tenements enjoy under the appellant's

by-laws the same rights which they might claim under their easements, and the easements have little or no value. They serve only to restrict the power of the membership corporation to alter its use of the land or to withdraw membership rights from any of those who now enjoy them. They do not interfere with the use to which the appellant has heretofore put the land.

Classification of property rights into definite categories do not affect the value of the rights. Practical considerations alone determine that. Can the property rights be sold or used by the owner either for profit or for the gratification of some need or desire, for which ordinarily men will expend money and which may be measured, even though inaccurately, in terms of money? Here the land taken could be used as a private beach by several hundred owners of land. The appellant used it for their benefit. The appellant could not make any profit by that use, but its purpose was not to make a profit but to benefit those persons who had the right to use the land as a bathing beach. If it had been free to exclude the property owners or include strangers in the benefit of such use, the land would unquestionably have had a real value to the appellant. It could not do so, because easements upon the land restricted its use to a definite group. The problem is whether a user, so restricted, has any value.

As we have said, no owner of a dominant tenement, enjoying rights to use the land, has made any claim here for compensation for destruction of an easement upon the land; and since all owners of dominant tenements enjoyed, irrevocably, membership rights, accorded by the appellant, coextensive with their easements upon the land taken, the easements, for practical purposes, had become merged in the membership rights. Indeed, the deeds which granted the easement rights contemplated that the fee of the servient land might be transferred thereafter to a property owners' organization, and that,

in that way, those owning a right in common to use the land for a beach might also control in common the title to the land, subject only to their common right of enjoyment. When such an organization was formed, the property owners were expected to, and have looked to that organization as the medium through which enjoyment of their common right might be preserved equally for all. In such circumstances, the ownership of the fee and the right of beneficial enjoyment are not completely severed. For all practical purposes, both have become vested in the membership corporation formed by owners of dominant tenements for the purposes of taking title for their benefit. The damage to the corporation by the taking of the land is the value of the use of that land by the corporation for the benefit of those accorded membership rights therein. When the corporation is paid compensation for the damage sustained, the damages must be divided among those accorded membership rights in proportion to the size of their property, and the annual charges imposed upon the property by the grants through which the property was transferred. Since the easement rights have become, for practical purposes, merged in the membership rights in the corporation the owners of the dominant tenements are damaged primarily through the destruction of their membership rights and are not entitled to substantial damages for the destruction of any unsubstantial residual rights which might remain to them under their easements. Their situation is the same as if they had jointly taken title to the fee of land in which they had a common right of enjoyment.

The problem would be, of course, different if the nature of the easement rights or of the membership rights were different. An easement appurtenant, such as an easement of light, air and access in a street, may be so closely connected with the dominant tenement that it cannot be separated from the use of the dominant tenement, or enjoyed except through such use. Then, perhaps, the

right of enjoyment of such use cannot, because of its nature, become merged in membership rights in a corporation. The situation is different here where the easement in the beach, though made appurtenant to several hundred parcels of land, is appurtenant to the land only in the sense that right of enjoyment is an incident of ownership of an estate in the dominant tenement. Otherwise the enjoyment of the easement has no connection with the use of the dominant tenement. The easement does not add to the value of the dominant tenement except in the sense that a purchaser acquiring the tenement would at the same time acquire a right of personal enjoyment of a private bathing beach.

It may be difficult to fix the value of the appellant's right to use the land for a private bathing beach for those accorded membership rights. Similar difficulty exists in other cases in fixing the value of land where use is restricted. Such land cannot be bought or sold in the open market. It could be purchased only by a restricted property owner's group or association like the appellant. Nevertheless, it is plain that such a group would ordinarily be willing to pay a substantial sum for a beach for the enjoyment of its members even though it could not admit others to its use, and it is damaged in proportion when land which it holds is taken. Estimates may vary as to such damage. There may be a wide field for the exercise of judgment by the trier of the fact; but there can be no doubt that what is taken has substantial value and that for the taking substantial compensation must be made.

The orders should be reversed, with costs, and a new hearing granted.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Orders reversed, etc.