## TUALATIN DEVELOPMENT CO., INC. *v.*
## DEPARTMENT OF REVENUE

R. W. Nahstoll, Lindsay, Nahstoll, Hart, Dafoe & Krause, Portland, Oregon, represented the plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, represented the defendant.

Decision for plaintiff rendered August 19, 1969.

EDWARD H. HOWELL, Judge.

Plaintiff has filed these appeals, which were combined for trial and decision, to set aside the opinion and orders of the Department of Revenue which upheld the valuation of plaintiff's property as assessed by the Washington County Department of Assessment and Taxation. The tax years involved are 1967-68 and 1968-69.

The subject property consists of a nine-hole golf course in King City, an incorporated city near Portland, Oregon. The Washington County Department

of Assessment and Taxation placed a true cash value of $161,200 on the property for the tax year 1967-68 and $140,600 for the year 1968-69. The plaintiff contends that the property has no true cash or market value.

The plaintiff started development of King City, a planned adult residential community, in 1964. The nine holes in the golf course are interspersed among the homes in the area. The entire development consists of 322 acres with 145 lots with homes bordering the golf course. The other lots are only a short distance from the golf course.

The course, which is available to residents who have purchased homes in the area and to the public, was opened in July, 1966. It is a small nine-hole course, 2400 yards in length which according to the testimony is shorter than the average nine-hole golf course. The initial cost of the land for the course was $42,500 and the improvements consisting of grading, filling, seeding, installation of greens, irrigation system and a building to store equipment cost $145,000.

The parties agree that the market data approach to value is not applicable to finding the true cash value of the subject property because of a lack of comparable sales. The defendant tax commission (now Department of Revenue) determined that the replacement cost approach was the best method of determining value.

The plaintiff argues that restrictions placed upon the initial development of King City by the Washington County Planning Commission required the plaintiff to set aside "open areas" in various places in the development. These open areas were to be retained as recreational areas and nonbuilding sites. The

county zoning ordinance relating to planned residential developments like the King City development was adopted to provide "a more desirable living environment * * * a more creative approach in the development of residential * * * land" and a "more efficient, aesthetic and desirable use of open area." The ordinance also requires the developer to submit a unit development application which must include the overall development plan showing, among other items, the location and identification of open spaces and recreational areas and other nonbuilding sites. The applicant must also submit a subdivision plat of the development. Upon approval of the application and the recording of the subdivision site plan a building permit may be issued and a zone change allowed.

The plaintiff followed the procedures outlined above and filed the development plan, recorded the plats showing the open areas were to be used as a golf course and received a zone change from single-family residential to planned residential.

The plaintiff contends that the open areas were required to be set aside in the development by the Washington County Planning Commission, that their use is restricted to open areas, that the golf course constructed in the open areas has been operating at a loss and that the land value is not in the golf course as such but in the property around the golf course, particularly in the lots bordering the course.

The necessity of requiring a developer to set aside open areas in planned community developments is now commonplace throughout this country. Parks, lakes and other recreational facilities are sometimes constructed in the open areas. The use of golf courses in the open areas is ideally adapted to the open space

zoning concept and it is clearly established that the existence of the open areas enhances the value of the surrounding land.[①]

It is not unusual for the developer of a large real estate subdivision to donate a portion of the real property to another for the construction of a golf course because the golf course or open area greatly increases the value of the remaining property and makes the lots more attractive and saleable. In some instances the open areas are conveyed to a nonprofit corporation for the construction and maintenance of a golf course and in other instances the developer will convey undivided interests in the open areas to the purchasers of the lots.

In the instant case the plaintiff offered to convey the golf course to the City of King City without consideration. The city council found that it would not be "in the best interests of the city or the residents to accept" and rejected the offer.

In income tax cases if the developer constructs a golf course or other recreational facilities in the open area for the purpose of enhancing the sale of the lots, the cost of the golf course or other facility is allocated as a part of the cost basis to the lots, even though the developer retains tenuous rights to the facility. However, if the developer retains ownership and control of the facility, then the cost of the facility is not properly allocated to the lots. *Colony, Inc. v. Commissioner,* 26 TC 30 (1956); *Country Club*

---

[①] See *"Old Orchard Country Club: A Study in Open-Land Planning,* Vol 23, No. 4, Urban Land, published by Urban Land Institute; *"Open Space Communities in the Market Place,"* Tech Bull 57, published by Urban Land Institute; *"Valuation of a Golf Course for Assessment Purposes,"* Vol 4, No. 1, Assessors Journal (April, 1969).

*Estates v. Commissioner,* 22 TC 1283; Rev Rule 478, 1968-2 Cum Bull 330.

In ad valorem property cases if the developer has conveyed his ownership in the open area to another, whether to operate the facility as a nonprofit corporation or conveyed an undivided interest to each purchaser of the lots, the property tax assessment would be made against the purchasers as the owners of the property.

The evidence clearly establishes that the market value of the lots, particularly those bordering the golf course, has increased substantially since the construction of the project in 1964. An appraiser for Washington County testified that the value of the lots bordering the golf course has increased from $2500 to $4000 per lot over the other lots and that golf course lots are now selling for as high as $7,000 to $8,000 per lot.

It is equally clear from the evidence that the golf course has operated at a loss since its opening in July, 1966. Without charging all properly allocable expenses the golf course showed a loss of approximately $15,000 from July, 1966, to September, 1967, and a total loss of approximately $22,000 from July, 1966, to June 30, 1969. The membership dues were increased as of January 1, 1969, but the membership has decreased since the dues were raised.

The plaintiff is in the position of being required to retain the property, if not as a golf course at least as open areas, under the restrictions imposed by the Washington County Planning Commission. While the highest and best use of the property is as a golf course, it is operating at a loss and the plaintiff's projection is that it will continue to operate at a loss in the foreseeable future.

Although the plaintiff has legal title to the open areas and has used them for a golf course the value is not in the open areas but in the residential lots, particularly in those bordering the golf course. The space was left as open areas to satisfy the requirements of the county and to facilitate the sale of the lots. The value of the open areas might be said to have been transferred to the lots and any other property the plaintiff owns in the development. The plaintiff's situation is the same as if the open areas consisted of a lake or a park that was being operated on an unprofitable basis but which the plaintiff was required by the restrictions to retain as part of the development.

■ In view of the restrictions, the enhanced value of the other lots, the refusal of the city to accept title to the golf course and the fact that the golf course was unprofitable from the time of its construction until the assessment dates involved, it is concluded that the subject property had no market value for the tax years 1967 and 1968.

The order of the department is set aside.