Argued June 2, affirmed August 19, 1970

## TUALATIN DEVELOPMENT CO., *Respondent, v.* DEPARTMENT OF REVENUE, *Appellant.*

473 P2d 660

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Walter J. Apley, Assistant Attorney General.

*R. W. Nahstoll,* Portland, argued the cause for respondent. On the brief were Lindsay, Nahstoll, Hart, Duncan, Dafoe and Krause, and Carl R. Neil.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN, DENECKE, HOLMAN, TONGUE and SCHWAB, Justices.

McALLISTER, J.

This is an appeal by the defendant Department of Revenue from a decree of the Tax Court holding that certain property owned by plaintiff had no value for property tax purposes in the tax years 1967 and 1968. The facts of the case, as related by the Tax Court, are undisputed:

"The subject property consists of a nine-hole golf course in King City, an incorporated city near Portland, Oregon. The Washington County Department of Assessment and Taxation placed a true cash value of $161,200 on the property for the tax year 1967-68 and $140,600 for the year 1968-69. The plaintiff contends that the property has no true cash or market value.

"The plaintiff started development of King City, a planned adult residential community, in 1964.[1] The nine holes in the golf course are interspersed among the homes in the area. The entire development consists of 322 acres with 145 lots with homes bordering the golf course. The other lots are only a short distance from the golf course.

"The course, which is available to residents who have purchased homes in the area and to the public, was opened in July, 1966. It is a small nine-hole course, 2400 yards in length which according to the testimony is shorter than the average nine-hole golf course. The initial cost of the land for the course was $42,500 and the improvements consisting of grading, filling, seeding, installation of greens, irrigation system and a building to store equipment cost $145,000.

"The parties agree that the market data approach to value is not applicable to finding the true cash value of the subject property because of a lack

---

[1] King City was incorporated in 1966. Its present boundaries substantially coincide with those of the area developed by plaintiff.

of comparable sales. The defendant tax commission (now Department of Revenue) determined that the replacement cost approach was the best method of determining value.

"The plaintiff argues that restrictions placed upon the initial development of King City by the Washington County Planning Commission required the plaintiff to set aside 'open areas' in various places in the development. These open areas were to be retained as recreational areas and nonbuilding sites. The county zoning ordinance relating to planned residential developments like the King City development was adopted to provide 'a more desirable living environment * * * a more creative approach in the development of residential * * * land' and a 'more efficient, aesthetic and desirable use of open area.' The ordinance also requires the developer to submit a unit development application which must include the overall development plan showing, among other items, the location and identification of open spaces and recreational areas and other nonbuilding sites. The applicant must also submit a subdivision plat of the development. Upon approval of the application and the recording of the subdivision site plan a building permit may be issued and a zone change allowed.

"The plaintiff followed the procedures outlined above and filed the development plan, recorded the plats showing the open areas were to be used as a golf course and received a zone change from single-family residential to planned residential.

"The plaintiff contends that the open areas were required to be set aside in the development by the Washington County Planning Commission, that their use is restricted to open areas, that the golf course constructed in the open areas has been operating at a loss and that the land value is not in the golf course as such but in the property around the golf course, particularly in the lots bordering the course.

* * * * *

"The evidence clearly establishes that the market value of the lots, particularly those bordering the golf course, has increased substantially since the construction of the project in 1964. An appraiser for Washington County testified that the value of the lots bordering the golf course has increased from $2500 to $4000 per lot over the other lots and that golf course lots are now selling for as high as $7,000 to $8,000 per lot.

"It is equally clear from the evidence that the golf course has operated at a loss since its opening in July, 1966. Without charging all properly allocable expenses the golf course showed a loss of approximately $15,000 from July, 1966, to September, 1967, and a total loss of approximately $22,000 from July, 1966, to June 30, 1969. The membership dues were increased as of January 1, 1969, but the membership has decreased since the dues were raised." 3 OTR 499-501, 503.

ORS 308.232 directs that all property shall be assessed at its true cash value. "True cash value" is defined by ORS 308.205 as meaning

"* * * market value as of the assessment date. * * * With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

Because there is, as the parties agree, no "immediate market value" for this property, the last sentence of ORS 308.205 governs its assessment.

The requirement that this property be maintained as open space determines or substantially affects its value. Plaintiff's objective in planning King City was to obtain Planning Commission approval of a zone change to "Planned Residential Development District", which permitted division of the property into smaller lots than those in an ordinary residential

subdivision. The golf course was included in the plan to meet a part of the open space requirements for such a zone designation. Plaintiff cannot sell the land free of the zoning restrictions or put it to any use which would interfere with its function as "open space". The use of the land as a golf course has been unprofitable and will probably continue to be so; no profitable use of the land has been suggested.

Moreover, the owners of the lots in King City appear to have a right to the continued maintenance of the property as a recreational area. Mr. Sorensen, the president of the Development Company, testified that the lots were advertised and sold with reference to the inclusion of the golf course in the development plan. The golf course is referred to in the recorded use restrictions applicable to the lots. The Company received higher prices for lots bordering on the golf course than for other lots in the development, the difference in some cases amounting to as much as $4,000 per lot. Plaintiff would undoubtedly be estopped by its conduct and representations to put the land to a use which would alter its character as recreational open space.

This situation is similar to many which this court has considered in cases involving dedication of streets and other public areas. In *Nicholas v. Title & Trust Co.*, 79 Or 226, 240, 154 P 391 (1916), it was said:

> "It has been repeatedly held that when an owner of land causes it to be surveyed into lots, blocks, streets and alleys, pursuant to which measurements a map is prepared, representing the lines run upon the ground, and he exhibits that map to intending purchasers in consummating the sale of real property indicated on the plat, he thereby irrevocably dedicates to the public the contemplated highways,

parks and commons thus designated, and no acceptance by any corporate authority is essential to give validity to the donation: (Citations omitted.)"

The basis of the dedication in such cases is estoppel. 79 Or at 241.

In *Morse v. Whitcomb*, 54 Or 412, 102 P 788, 103 P 775 (1909), defendants were held estopped to deny that certain land in a subdivision had been dedicated as a street. In the opinion the court stressed the fact that the street had added to the value of the nearby lots:

"* * * It would certainly be inequitable to permit defendants to receive the enhanced value of the lots sold plaintiffs by reason of their proximity to what was represented to them as an intended street, and at the same time to retain the strip of land, which largely served the purpose of bringing about the sale. In other words, to do so would be to say that on the strength of this strip becoming a street much money has been received, and after the receipt thereof the street shall be closed, and at the same time the money acquired on its account retained." 54 Or at 420.

As to the effect of representations made in a plat or development plan, see also *Menstell et al v. Johnson et al*, 125 Or 150, 262 P 853, 266 P 891, 57 ALR 311 (1928) (building setback lines); *McCoy v. Thompson*, 84 Or 141, 164 P 589 (1917) (streets); *Steel v. City of Portland*, 23 Or 176, 31 P 479 (1892) (park).

Although these cases found that public rights had been created by dedication, it was also noted in *Menstell et al v. Johnson et al*, supra, that any modification of the building setback lines established by the development plan would require the consent or acquiescence of the owners of the lots already sold. 125

Or at 167. Although there is no claim of a dedication in this case, we think the same principle of estoppel would apply[2] and those who purchased lots in King City in reliance on the golf course as a part of the development could prevent plaintiff from altering the recreational and open-space use of the land.

The question of the proper assessment valuation of land where the use is so severely restricted that its owner derives no benefit from the ownership is a new one in Oregon. The courts of other states have been confronted with similar situations and have held that when the use of land is so restricted that its ownership is of no benefit or value, the assessment for tax purposes should be nothing or merely nominal. A case particularly in point is *Crane-Berkley Corporation v. Lavis*, 238 App Div 124, 263 NYS 556 (1933), in which an assessment of park property was contested. The park was owned by a developer, who had been required by law to set aside park land for playgrounds or recreational purposes in order to obtain planning commission approval of his development scheme. The developer retained the fee title to the park areas, and deeds to the lots in the subdivision stated that the grantor would restrict the use of the areas in question to park and outdoor recreational uses for the benefit and use of the lot owners. The court held that the deeds did not grant easements to the lot owners, but that

"* * * the respondent by the situation it has created is estopped for all time from denying to its grantees the use and enjoyment of the parks in the development as shown on its plan. This estoppel,

---

[2] For a discussion of the relationship between the principles of dedication and estoppel see Parks, The Law of Dedication in Oregon, 20 Or L Rev 111, 134-137 (1941).

> it seems to me, in effect is the equivalent of a grant of an easement, and its result is to destroy, and as a fact it has destroyed, the taxable value of the park lands in the owner of the fee of those lands, * * *." 263 NYS at 560.

The same result has been reached by the New York courts where the land in question was so burdened by easements as to be of no use or benefit to its legal owner. This was so in *People ex rel Poor v. O'Donnel*, 139 App Div 83, 124 NYS 36, aff'd 200 NY 518, 93 NE 1129 (1910), in which the land had been conveyed to trustees to be maintained as a private park for the use and benefit of the owners and occupants of a number of nearby lots; and in *People ex rel Topping v. Purdy*, 143 App Div 389, 128 NYS 569, aff'd 202 NY 550, 95 NE 1137 (1911), involving land which the owner had to keep open because of easements for access and air for the adjoining lots.

Defendant argues that these cases are distinguishable because the land in question was burdened by easements or rights found by the courts to be equivalent to easements, whereas there are no easements in this case and plaintiff can exclude the owners of King City lots and members of the public from the use of the golf course property. We need not decide whether this is a correct description of plaintiff's position. It seems to us unlikely that the residents of King City could be absolutely excluded from the area, but plaintiff's right to condition the use of the golf course upon the payments of membership or greens fees has not been challenged. This right has not, however, given the property any value in plaintiff's hands; what is significant is not the extent to which it can limit use of the property by others, but the limitations on plaintiff's own use. In support of its argument de-

fendant cites *Matter of City of New York* (*Public Beach*), 269 NY 64, 199 NE 5 (1935), a condemnation case in which it was held that an award of merely nominal compensation was improper. The beach property was owned by an association whose members were all lot owners in a residential development, and was subject to easements appurtenant to those lots. The owner-members had the right to use the beach in common, and to the exclusion of the public. The city argued that the association owned only the bare legal title and was not entitled to substantial compensation.

That case is clearly distinguishable. The court treated the association as the representative of all of the lot owners and directed a substantial award—not for the taking of the encumbered fee title alone, but also for the taking of the members' rights of use. The New York court's approach does not apply to this case where there is no question of plaintiff's standing in the shoes of the King City residents. A statement from that opinion does, however, have general application here:

> "Classification of property rights into definite categories do not [sic] affect the value of the rights. Practical considerations alone determine that. Can the property rights be sold or used by the owner either for profit or for the gratification of some need or desire, for which ordinarily men will expend money and which may be measured, even though inaccurately, in terms of money? * * *" 269 NY at 74.

Taking into account such "practical considerations" the Tax Court held in this case that plaintiff's property had no true cash value for the years in question. We agree with that conclusion.

Substantial reductions in assessment were re-

quired in *Lochmoor Club v. City of Grosse Pointe*, 10 Mich App 394, 159 NW2d 756 (1968), where a deed restriction required the land in question to be maintained as a park, and in *Borough of Englewood Cliffs v. Estate of Allison*, 69 NJ Super 514, 174 A2d 631 (1961). The extent of the reduction does not appear in *Lochmoor*, but in the *Allison* case, involving land held in trust for the benefit of the public on terms which precluded profitable development, it was held that an assessed valuation one tenth that of the same land had it been unencumbered by the trust would fairly reflect the remote possibility of the sale of the bare legal title.

Assigning a money value to such a speculative possibility seems to us unnecessary; the figure could only be arrived at arbitrarily. We agree with the Tax Court that the golf course property was without taxable value during the years involved in this case. It was clearly of no economic benefit to plaintiff, nor is there anything in the evidence to indicate that it would have been of value to anyone else. There was no market for the land, and plaintiff's offer to donate it to the City of King City was refused. The decision of the Tax Court was amply supported by the evidence, and is affirmed.