Argued and submitted May 4, affirmed September 16, 1981

# WILLAMETTE FACTORS, INC.,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

(TC 1244, SC 27295)

633 P2d 781

Carl N. Byers, Judge Pro Tempore.

James T. Dunn, Portland, argued the cause for appellant. With him on the brief were Edward Murphy, Jr., and Wheelock, Niehaus, Hanna, Murphy, Green & Osaka, Portland.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James M. Brown, Attorney General, Salem.

DENECKE, C. J.

## DENECKE, C. J.

At issue is the valuation, for real property tax purposes, of the golf course, clubhouse and tennis courts at Charbonneau.

The Tax Court valued the course at $300,000 and the other improvements at $405,000. The taxpayer contends the value is zero. 8 OTR 400 (1980). We affirm.

Charbonneau is a planned residential development about 20 miles from the center of Portland and located near the north-south interstate freeway. The development plan was approved on the condition that open space would be perpetually provided which was to consist of a 27-hole golf course. The same assurance was made contractually to buyers of lots. The unit owners also have contracted for the first right to purchase the course at book value.

We have determined the valuation of two other golf courses built in connection with residential developments on property that was perpetually reserved as open space. In *Tualatin Development v. Dept. of Rev.*, 256 Or 323, 473 P2d 660 (1970), we determined that the King City course had no value for the tax years 1966 and 1968. In *Brooks Resources Corp. v. Dept. of Rev.*, 286 Or 499, 595 P2d 1358 (1979), we determined the Black Butte course had a value on January 1, 1975, of $560,000.

The King City course was a shorter than average 9-hole course built in connection with a planned adult residential community. Residents could play on payment of membership fees and the public could play on payment of greens fees. There were no comparable sales upon which to form an opinion based on the market approach. The course opened in July 1966 and operated at a loss of at least $22,000 from that date to June 30, 1969. The owner's offer to donate the course to the City was refused by the City.

Black Butte Ranch is a planned unit development just east of the summit of the Cascade Range. The plan called for 1,250 homesites on 1,550 acres. The development includes an 18-hole "championship" golf course which means, among other things, a course with a length of approximately 6,000-7,000 yards. The master plan approved by the county requires that the golf course land be

maintained as open space and the homesite owners were promised that it would be maintained as a golf course. The course showed an accounting loss from 1972 through 1976, but the loss decreased every year. The golf professional testified no money could be made on the course; however, we found he was not qualified to testify as an expert in accounting or real estate appraising.

■ The value we are seeking is "market value." ORS 308.205.

■ The Tax Court did not rely upon the replacement cost approach and neither do we. The Tax Court did regard one sale of another golf course, Rock Creek, as some corroboration of the value primarily determined by the use of the income approach. We are of the opinion that the income approach is the most credible and only consider the evidence regarding the sale of the Rock Creek course as supporting the proposition that there is some market for golf courses built in connection with a planned unitdevelopment.

Eighteen holes of the Charbonneau course were completed and in operation in the summer of 1973. It is an "executive" course which means it is shorter than a "championship" course. The Charbonneau course is about 4,000 yards. The income from the golf course is from greens fees paid by the public playing the course and membership fees paid by the residents of Charbonneau.

In 1974 golf course revenues were $53,000 and direct expenses $100,000. In 1975 revenues were $68,000 and direct expenses $112,000. In 1975 it is estimated 25,000 rounds were played. The state's appraiser was of the opinion that 65,000 rounds per year was the potential for the course with a potential income of $140,000 per year.

The state's appraiser took the estimated income, used a capitalization rate, and by an accepted method arrived at an opinion as to present value. Willamette Factors' principal objection to the state's appraiser's calculation is his estimate of future income.

■ We are required to review decisions of the Tax Court de novo. ORS 305.445.

■     With such a short history of earnings, we have the same apprehension about fixing value by the income approach as we expressed in *Brooks Resources Corp. v. Dept. of Rev., supra,* 286 Or 499, 505-506. As we also stated in *Brooks,* however, despite its deficiencies we are of the opinion the income approach is the most appropriate method by which to determine value in this case.

The parties stipulated that the club house and tennis courts have a value of either $405,000 or zero, depending upon our decision. The stipulation did not include the golf course; however, the parties did not suggest any basis for modifying the values testified to by the appraisers; that is, $300,000 or zero. The alternative values for the golf course, therefore, are either $300,000 or zero.

We consider the most important factor in concluding that the course has value is that during 1974 and 1975, the years for which we have income records, there were no more than 125 residential units constructed, whereas 1,600 units are projected to be constructed by the project's completion. When the project is completely developed there will be about 13 times as many residents as there were in 1974 and 1975. We can reasonably infer that a substantial increase in income from the residents' use of the golf course will result. We are aware of the testimony of the appraiser called by the taxpayer that the construction rate is "far below its originally projected absorption rate." This delay will postpone the time at which the course would reach its full value, but it does not prevent the property from having some present market value.

Affirmed.