(139 App. Div. 83.)

PEOPLE ex rel. POOR et al. v. O'DONNEL et al., Tax Com'rs.

SAME v. WELLS et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department.   June 24, 1910.)

1. CERTIORARI (§ 60*)—QUASHING WRIT—QUESTIONS REVIEWABLE.

The court, on motion to quash or supersede writs of certiorari to review an assessment of real estate on the ground that the petition, averring that relators are the owners of the property and the persons in whom, pursuant to trust deeds and by succession to the original trust deeds, title is vested, may not determine the validity of the original trust deeds, but must take the statements of fact in the petition as true.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 163–166; Dec. Dig. § 60.*]

2. MUNICIPAL CORPORATIONS (§ 974*)—TAXES—CERTIORARI—ASSESSMENTS—PARTY AGGRIEVED.

One who must pay taxes assessed by a city on land devoted to a private park for the benefit of the owners and occupants of lots surrounding it, and then recoup himself from the surrounding owners obligated to bear their share thereof, is a person aggrieved by an erroneous assessment of the park for taxation, and he may institute certiorari to review the same.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2083–2086; Dec. Dig. § 974.*]

3. MUNICIPAL CORPORATIONS (§ 972*)—TAXES—ASSESSMENTS—VALUATION.

Under Greater New York Charter (Laws 1901, c. 466) § 889, requiring the deputy tax commissioners in arriving at their conclusions as to the assessable value of taxable property to state under oath the sum for which, in their judgment, each separately assessed parcel under ordinary circumstances would sell if wholly unimproved, the commissioners of taxes and assessments must year by year assess property devoted to a private park at its actual market value.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2078–2082; Dec. Dig. § 972.*]

4. EASEMENTS (§ 42*)—EXPRESS GRANT—NATURE OF RIGHT.

Where an owner of land conveyed a part of it to trustees in trust to lay out and maintain it as a private park for the use of the surrounding property, and then executed a confirmatory deed whereby the use of the park was made an easement appurtenant to the surrounding property, the land included in the park must be devoted exclusively to the enjoyment and use of the surrounding property, and a title to the land included in the park is simply a naked one with none of the usual advantages attendant on the ownership of real estate.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 97; Dec. Dig. § 42.*]

5. MUNICIPAL CORPORATIONS (§ 972*)—TAXES—VALUATION OF PROPERTY.

Where a city in making an assessment added to the value of property surrounding a private park created for the benefit of the surrounding property the value of the easements in the park equal to the value of the park itself, it could not assess against either the trustees holding the fee of the park for the benefit of the surrounding property or against the owners of the surrounding property the value of the park property itself, because it had in effect been assessed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2078–2082; Dec. Dig. § 972.*]

---

Appeal from Special Term, New York County.

Certiorari proceedings by the People, on the relation of Henry W. Poor and others, against Frank A. O'Donnel and others, as Commissioners of Taxes and Assessments of the City of New York; and against James L. Wells and others, as Commissioners of Taxes and Assessments of the City of New York. From an order denying a motion to quash or supersede the writs of certiorari, defendants appeal. Affirmed.

The following is the opinion of Justice Dowling:

This is a motion to supersede or quash writs of certiorari sued out herein, upon the ground that the petitions upon which said writs were issued do not contain facts showing that the assessment complained of is either illegal or erroneous, or that the relators will be injured thereby. The writ prayed for is to review the action of the commissioners of taxes and assessments in the city of New York, in assessing for taxation, for the year 1903, the property known as "Gramercy Park," in the sum of $500,000, a similar assessment levied for the year 1904, and an assessment in the sum of $750,000 thereon levied for the year 1905.

The questions raised by the city's motion necessitate an examination of the conditions under which Gramercy Park is held and owned. On December 17, 1831, the property then being held by one Samuel B. Ruggles, he desired to devote it to the formation and establishment of an ornamental private park or square for the use and benefit of the owners and occupants of 66 certain lots of land surrounding it and fronting on East Twentieth street and East Twenty-First street, and on the streets now known as Gramercy Square East and Gramercy Square West; 60 of said lots being numbered 1 to 60, inclusive, and the others being lettered A to F, inclusive. And being desirous of assuring the use and benefit of such park to the future owners and occupants of the surrounding lots, said Ruggles and wife conveyed the property to five certain persons, as joint tenants, upon trust, and to the end that they and their successors should inclose and lay it out and preserve, maintain, and keep it as an ornamental private park or square; that they should pay, satisfy, and discharge all such taxes and assessments as might at any time thereafter be lawfully levied thereupon; and that they at all times permit the owner or owners of any and every of the 66 surrounding lots, their families and tenants, to have free ingress and egress to and from such park or square and to use the same as a place of common resort and recreation, subject to such rules and regulations as two-thirds of the number of said lot owners might, from time to time, establish. By said deed said Ruggles also covenanted with the trustees that the 60 lots, out of said 66, numbered 1 to 60, inclusive, should forever remain bound and chargeable unto the trustees, for the time being, for the payment of one-sixtieth portion of all such sums of money as the trustees might lawfully pay or expend from time to time under their trust. This deed was executed by the persons named as trustees, who accepted the powers and trusts therein created.

Thereafter a confirmatory deed was made, December 24, 1833, whereby the use of said park in the manner mentioned in the original deed was made an easement appurtenant to the land theretofore conveyed to the respective lot owners, with a further covenant upon the part of Ruggles that all future conveyances by him, of any part of the remaining lots, should be with and subject to a similar easement and conveyance. Subsequently Ruggles conveyed the remainder of said lots of land, and said 60 lots, numbered 1 to 60, inclusive, are now owned and held subject to the terms, covenants, and conditions of said two deeds; the owners of those lots now owning as easements appurtenant to their respective properties the right to have free ingress and egress to and from the park or square and use and enjoy the same in the manner prescribed in the said deeds. These easements are such that the land cannot be used for any other purposes than those mentioned in the deeds,

and their existence makes it necessary to devote the land exclusively to park purposes for the benefit of the owners of the surrounding lots.

Since the park was established, it has been the practice of the tax commissioners to include in their assessment of the dominant tenements the full value of the park privileges or easements. The result is that the assessed value of the lots surrounding the park, exclusive of their improvements, is several hundred dollars per foot, in excess of the assessed value of lots of the same size and character in the same section of the city; this excess representing the value of the park rights, privileges, and easements appurtenant to the lots surrounding the property of the relators. This excess amounts to more than what would be the full value of the land embraced within the limits of the park if the same could be sold free and unencumbered. The property known as "Gramercy Park," subject to these restrictions and easements, has no value and could not have been sold, under ordinary circumstances, on the second Monday of January of this year, nor at any other time since December 17, 1831, for any price whatever.

A preliminary objection is made by the city that the relators cannot maintain this proceeding, as they are not the persons aggrieved by the action of the commissioners of taxes and assessments herein. The relators, in their petition, aver that they are the owners of the property in question; they are the persons in whom, pursuant to the provisions of the trust deeds and by succession to the original trust deeds, title is vested. It is their duty, under the trust deeds, to make such payments and disbursements as are required for the protection of the property and the carrying out of the trusts. They are to be reimbursed for their disbursements, pro rata, by the owners of the surrounding property. It is not for this court, upon a motion of this kind, to determine the validity of the original trust deeds, even if they were attacked. For the purposes of this motion, however, the statements of fact in the petition must be taken as conceded. The taxes in question, a review of which is sought hereby, have been assessed against property whereof the relators are not the actual legal owners. They must pay whatever tax is imposed and then recoup themselves from the surrounding owners obligated to bear their share thereof. If they were to pay an unlawful tax assessed against the property, the adjacent property owners might resist and refuse to pay their share thereof. The owners of the adjacent property could not seek to review this assessment, not having title to the park, but only an easement therein. It seems to me, therefore, that the relators are clearly the persons aggrieved within the meaning of the law, and have the legal right to commence these proceedings.

We then come to the consideration of the objection urged by the relators against these assessments, which is that, when an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement. The respective tenements should thereafter be assessed accordingly; the determinate question of the assessable value of each of the properties affected being its market value, or the amount for which it would sell under ordinary circumstances. By section 889 of the Greater New York Charter (Laws 1901, c. 466), it is made the duty of the deputy tax commissioners in arriving at their conclusions as to the assessable value of taxable property, to state, under oath, to the board, the sum for which, in their judgment, each separately assessed parcel of real estate, under ordinary circumstances, would sell if they were wholly unimproved. Under this provision, it is the duty of commissioners of taxes and assessments to assess this property year by year at its actual market value, no more, no less. People ex rel. M. R. Co. v. Barker, 146 N. Y. 312, 40 N. E. 996. In this case it is apparent, from the statement heretofore made, that the relators' property cannot be sold, under ordinary circumstances, for any sum whatever. No person buying this property would acquire any beneficial interest therein. Assuming that he could get legal title to it from the trustees, subject to the easements, his title would simply be a naked one with none of the usual advantages attendant upon the ownership of real estate; he would simply hold a title to a piece of property from which he could derive no benefit and in which he could have

no rights of enjoyment, but which would be devoted entirely to the enjoyment and use of the surrounding property owners. That the easement in question has a value is sufficiently established by the fact that the city has added to the ordinary value of the surrounding lots participating in the use of this park the sum of $660,000, while the park itself, if sold free from restrictions and rights during the years 1901, 1902, and 1903, would not have been sold for more than $542,000. The city has, therefore, taken unto itself the advantage of the second of the propositions heretofore laid down, namely, that the dominant estate should be increased by the value of the easement. It cannot, in fairness and justice, do this, and, at the same time, refused to accede to the justice of the first of the propositions, namely, that the market value of the servient estate is lessened by the value of the amount of the easement. The city, in other words, having added to the market value of the surrounding lots a sum as the estimated value of the easements in the park, which exceeds or equals the value of the park itself, it cannot assess over again against either the trustees who hold the fee, nor by necessary consequence against the owners of the land benefited by the easement, the value of the park property itself which it has, in effect, already assessed and collected.

The motion to quash or supersede should, therefore, be denied, with costs.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

C. A. Peters, for appellants.
R. C. Gasser, for respondents.

PER CURIAM. Orders affirmed, with costs and disbursements, on opinion of Dowling, J., at Special Term.

---

HERRMAN et al. v. ALTMAN et al.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

NEW TRIAL (§ 100*)—NEWLY DISCOVERED EVIDENCE.
    Evidence consisting of the testimony of plaintiff's employé respecting admissions claimed to have been made by defendant after trial is not newly discovered evidence for which a new trial will be granted.
    [Ed. Note.—For other cases, see New Trial, Cent. Dig. § 203; Dec. Dig. § 100.*]

Appeal from Appellate Term.
Action by Abraham Herrman and another against Moritz Altman and another. From the determination of the Appellate Term, affirming an order of the City Court granting a new trial for newly discovered evidence, defendants appeal. Reversed, and motion denied.

See, also, 122 N. Y. Supp. 1131.
Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Robert L. Turk, for appellants.
Edwin D. Hays, for respondents.

MILLER, J. The so-called newly discovered evidence consists of the testimony of the plaintiffs' employé respecting admissions claimed to have been made by the defendant after the trial. Such evidence may be said to be newly "created," but cannot appropriately be termed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes