■ In the Matter of PROPERTY OWNERS OF SLEEPY HOLLOW LAKE, INC., Respondent, v TOWN OF COXSACKIE ASSESSMENT BOARD OF REVIEW et al., Appellants. (And Another Related Proceeding.)—Mahoney, P. J. Appeals from two orders and judgments of the Supreme Court at Special Term (Cholakis, J.), entered August 27, 1985 in Greene County, which granted petitioner's applications, in proceedings pursuant to Real Property Tax Law article 7, to reduce the assessments on petitioner's properties to zero for the year 1984, and directed respondents to refund taxes previously collected.

Petitioner, a not-for-profit corporation, commenced these proceedings pursuant to Real Property Tax Law article 7 against, among others, respondents Assessment Boards of Review of the Towns of Athens and Coxsackie in Greene County seeking a reduction of its real property assessment for 1984. After issue was joined, petitioner moved for summary judgment canceling, revising or correcting said assessments. Special Term found the assessments of each of petitioner's

parcels to be illegal as a matter of law and reduced the assessments to zero. The court also directed that all county, town and school taxes for 1984 be refunded to petitioner. These appeals by respondents ensued.

Petitioner's properties which are the subject of these proceedings are described as "common areas" of a planned community and consist of a stable, pool, dam, lodge, marina, lake and park. Since the parties agree that the correct manner of taxation is to reduce the assessment on the servient estate (i.e., the common areas) and assess this property as part of the dominant estate (i.e., the properties owned by the individual land owners) *(see, People ex rel. Poor v Wells,* 139 App Div 83, 87-88, *affd* 200 NY 518), the sole issue is whether a dominant-servient estate relationship exists between the individual lots and the common areas owned by petitioner. Resolution of this issue mandates an examination of the quitclaim deeds from petitioner, as the developer of the community, to each of the individual lot owners to determine if such deeds conveyed an easement to the individual lot owners to use the so-called "common areas".

Each of the deeds to the individual lot owners recites that the "conveyance is made and accepted subject to the Declaration of Protective Covenants executed by [petitioner] * * * as amended * * * and also subject to the By-laws of [petitioner]". Article II, § 4 of the bylaws, defining petitioner's membership, states that "Members and Associate Members shall have a *license to use the 'Common Areas',* subject to the provisions of the Declaration and subject to such other rules and conditions as may be established by [petitioner's Board of Directors]" (emphasis supplied). While the language of article II, § 4 of the bylaws seems to grant a license rather than an easement to petitioner's grantees, the preamble of the "Declaration of Protective Covenants" states: "All of the provisions of this Declaration are intended to create 'mutual, real or predial servitudes' upon each of said Lots herein and to create reciprocal rights and duties between and among the respective owners of all of said Lots. *All of such provisions shall * * * operate as covenants running with the land* for the benefit of each and all other Lots in the Development" (emphasis supplied). Clearly, the declaration of protective covenants, read together with the bylaws, is ambiguous as to the nature of the interest of lot owners in the common areas of petitioner's development. The preamble of the declaration of protective covenants imposes a servitude upon petitioner's lands in the nature of a covenant running with the land, while the incor-

porated bylaws state that grantees of petitioner shall have a license to use the common areas. Such a conflict in terminology does not lend itself to summary relief.

Apart from the apparent ambiguity created by the declaration of protective covenants, the parties made no effort to determine if the servient estate (i.e., the common areas) had any value of beneficial interest for its owner. It is possible that a parcel is so interwoven with a dominant estate that it has no extrinsic value that is available for tax purposes. If, however, it is shown that a servient parcel has substantial value, the land can be taxed despite its relationship to a dominant estate owned by a member of a community development (see, *Grasser v Graham*, 97 Misc 2d 417). These factual issues must be determined at trial.

Orders and judgments reversed, on the law, with costs, and motions for summary judgment denied. Mahoney, P. J., Kane, Casey and Levine, JJ., concur.