*902 OPINION OF THE COURT
Robert J. Lunn, J.
This is an article 7 tax proceeding brought on pursuant to the Real Property Tax Law and tried before this court. Following the close of proofs, the parties submitted proposed findings of fact and conclusions of law and the court reserved decision. The sole issue in this real property tax assessment proceeding is the fair market value of the 16 parcels identified in petitioner’s article 7 petition as of January 1, 1996 and January 1, 1997. Each parcel contains between 46 and 65 feet of frontage on either Lake Ontario, Cranberry Pond or Long Pond. The parties have stipulated that the applicable equalization rates for the tax years at issue are those set by the office of Real Property Services. The current equalization rate applicable to parcels within the Town of Greece is 100%. The subject parcels are located in the Town of Greece and are owned by petitioner. Respondents have assessed the subject parcels for tax year 1996 through 1997 at $5,000 each. The actual legal description of each lot at issue is set forth at appendix A to this decision.
The subject properties provide recreational use and water access to the residents of the Grandview Heights subdivision and are shown on a subdivision map for the Grandview Heights development that was filed in 1924. Each of the subject parcels was denoted “park” on that map. The court finds that conveyances of parcels within the Grandview Heights subdivision made subsequent to the filing of the 1924 map referred to the map in the deeds memorializing such conveyances thus creating a use easement running to the benefit of the residents of the Grandview Heights subdivision. The court further finds that thereafter, in 1942 when the subject parcels were conveyed by deed from H.T. Hughes, Inc. to Grandview Heights Association, Inc., the deed expressly restricted use of the subject parcels for the common benefit of the Grandview Heights residents where it stated in pertinent part that: “This conveyance of said parcels of land is made to the grantee, its successors and assigns for the common use and benefit of the owners of land within the confines of the said Grand View Heights Tract as shown on said map thereof, and any and all resubdivisions thereof, their executors, administrators, distributees and assigns. In the event that said parcels of land or any one of them shall cease to be used for the common use and benefit of the owners of land as aforesaid, the title of said parcel or parcels shall revert to the grantor herein, its successors and assigns” *903 (emphasis added). Subsequent conveyances of the subject parcels continued the same express deed restrictions.
At trial, appraiser John Geisler testified on behalf of the petitioner. Richard C. Ackerman, a certified general appraiser, testified on behalf of the respondents. John Geisler is a senior residential appraiser, prepares and reviews several hundred real property appraisals each year, has been a licensed real estate broker since 1963, was a former cochairperson of the Town of Greece Board of Assessment Review from 1972 through 1978, and has extensive experience buying and selling property in the Town of Greece. Mr. Ackerman was likewise found to be well qualified and presently working under the tutelage of John E. Nicolo, well known to this court as an expert in the field.
Both appraisers utilized a market data or market sales approach to valuation which the court finds to be the most reasonable method of valuation for these vacant waterfront parcels of land. Their conclusions differ significantly.
Respondents’ appraiser, Mr. Ackerman, concludes that the basic problem in estimating the value of the subject properties is the “restriction on development” and compares the subject lots to properties which he opines have similar building restrictions. He considered the subject parcels’ highest and best use to be undeveloped vacant land. Respondents’ appraiser failed to account, however, for the most critical factor in his analysis of the subject properties. Nowhere does he adequately account for the use easements and deed restrictions common to the lots at issue. He generally concluded that there were “restrictions against development” but displayed a lack of understanding as to what those restrictions were and their corresponding impact on valuation. Mr. Ackerman conceded that with respect to the four comparables he selected, any prospective purchaser would enjoy a right to private possession and use. He further acknowledged that such a purchaser would not be bound by deed restrictions or otherwise to permit use of that parcel for access to the bay by any nonowner. In contrast, the subject parcels have easements running to the benefit of the neighbors and a right of reverter to the original grantor. This in the court’s opinion is a significant and critical factor.
In reviewing parcels for use in his appraisal report, Mr. Geisler considered the use easements and express deed restrictions on the subject parcels and attempted to locate properties comparable to the subject parcels for the purpose of determining their fair market value. Mr. Geisler found no properties *904 that contained similar use easements and express deed restrictions. His appraisal report did review three properties that were waterfront vacant lots, but those properties did not contain similar use easements and deed restrictions. He testified as to his understanding of the use easements and deed restrictions on the subject properties from the perspective of a real estate broker, and how such restrictions and easements would affect their marketability and their market value. Mr. Geisler further stated his opinion that there is no active market for parcels that have use easements and deed restrictions similar to those on the subject property, because any purchaser of the subject parcels would not have any private right of use or possession, and would be an owner in title only. In short there is no independent active fair market value for these properties. The court adopts this opinion as its finding, noting additionally that while the subject parcels provided access to Cranberry Pond, Long Pond and Lake Ontario for the residents of the Grandview Heights subdivision, those same bodies of water were readily accessible to members of the general public through various other ingress points. Mr. Geisler further opined and the court so finds that while the subject parcels do have value, that value is limited to the residents of the Grand-view Heights subdivision; and the value of the subject parcels was subsumed in the value of the homes within the Grandview Heights subdivision. Petitioner’s appraiser estimated and the court finds that homes in the Grandview Heights subdivision sell at a premium in the range of 4% to 5% over similar homes in the Town of Greece because of the waterfront access afforded to them by the subject parcels. Thus, the value of the vacant lots is fully reflected in the value of the subdivision homes which have the use and benefit of those lots subject to the use easements and deed restrictions. This finding is supported by the testimony of Mr. James Meynard, who identified himself at trial as an owner of a home within the Grandview Heights subdivision. He confirmed that his home was marketed for sale with waterfront access and that he expected to and did pay a premium on his home as a result of such waterfront rights.
The definition of “fair market value”, accepted by the American Institute of Real Estate Appraisers and Society of Real Estate Appraisers, is “the most probable price in terms of money which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and as *905 suming the price is not affected by undue stimulus”. In no case shall an assessment exceed that value. (NY Const, art XVI, § 2; Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1 [1975].)
As both counsel correctly noted, there is a presumption of validity which attaches to all assessments (Matter of American Broadcasting Cos. v Tax Commn., 83 AD2d 502, affd 57 NY2d 792 [1982]). The presumption is not absolute, however, and may be rebutted when petitioner makes a prima facie showing that such assessment is erroneous. (See, e.g., Matter of Broadway-Saranac Lake Corp. v Board of Assessors, 43 AD2d 649 [3d Dept 1973].) Petitioner bears the burden of establishing by substantial evidence that its property was overvalued. (See, Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 242 AD2d 904 [4th Dept 1997]; Matter of South Slope Holding Corp. v Board of Assessment Review, 244 AD2d 891 [4th Dept 1997].) Respondents, relying upon the Fourth Department decision in Matter of Niagara Mohawk Power Corp. v Town of Tonawanda Assessor (233 AD2d 920 [4th Dept 1996]), argue that petitioner has not made out a prima facie case of over-assessment because the Geisler appraisal lacks the facts, figures and calculations by which his conclusions were reached as required by 22 NYCRR 202.59 (g) (2). This court does not believe that the Niagara Mohawk Corp. decision mandates this result because that case was very fact specific and the Fourth Department did not articulate any standards by which an appraisal should be measured to assure it meets the criteria set forth in 22 NYCRR 202.59 (g) (2). This court has examined the Geisler appraisal received in evidence at trial and finds that it contains all the facts, figures and calculations necessary to support its conclusion of value or, in this case, the lack thereof. Additionally, respondents argue that petitioner’s appraisal is flawed in that it fails to appraise each and every parcel at issue. However, on these facts where the theory of valuation (or lack of valuation) is well articulated and where appraising each parcel would be repetitious and redundant, the conclusions may be offered in one general report. (See, 22 NYCRR 202.59 [g] [3].)
The court concludes that petitioner met its burden by establishing that any potential buyer who attempted to exclude Grandview Heights residents’ access and use of the parcels would risk reversion to the grantor. The use easements were created upon filing of the 1924 map. The map dedicated the subject parcels as “parks” for use by the subdivision residents. *906 Any transfers made thereafter wherein the lots were made according to the filed map constitutes an offer of dedication of the subject parcels to public use. Subsequent purchasers are entitled to have the land dedicated as “parks” which as a matter of law gives them an implied easement as to those vacant parcels. (See, e.g., 10 Warren’s Weed, New York Real Property, Parks, § 2.01 [4th ed 1995]; Landon v City of Binghamton, 79 AD2d 810 [3d Dept 1980].) The easement is a use easement for common recreational interest and would survive any reversion back to the grantor. Grandview Heights residents would continue to retain a legal interest in the vacant parcels. The court concludes that the parcels have no market value since a prospective purchaser would acquire no beneficial interest or incidents of ownership, only bare legal title. (See, People ex rel. Poor v O’Donnel, 139 App Div 83 [1st Dept 1910], affd 200 NY 519 [1910].) In contrast, the other lot owners in the subdivision recognize an increase in the value of their dominant estate which is properly reflected in their tax assessment. In facts strikingly similar to the case at bar, the Court in Matter of Crane-Berkley Corp. v Lavis (238 App Div 124 [2d Dept 1933]) held there to be no assessable independent value to a parcel dedicated as a park for the residents of a subdivision. The Court states (at 127): “This estoppel * * * is the equivalent of a grant of an easement, and its result is to destroy, and as a fact it has destroyed, the taxable value of the park lands in the owner of the fee of those lands, or, it may be stating it better, it has shifted the taxable value from the park lands to the other lands in the development, to the owners of which the use and enjoyment of the park lands for park purposes for all time is assured under the doctrine of estoppel.”
Respondents, in their appraisal, failed to account for the use easement and deed restrictions common to the subject lots but instead characterized the lots as comparable to lots with building restrictions. The court concludes that this is a misapplication of fact and law as to these particular vacant lots which form the basis of this article 7 tax proceeding.
For the reasons heretofore stated, petitioner’s petition is granted and the lots at issue are determined to have no independent market value.
APPENDIX A
Sixteen Grandview Parcels
(a) Parcel 1: 419 North Drive has 50 feet of frontage on Cranberry Pond. Parcel is rectangular with a slight downward *907 slope from the road to the water. The parcel has a boat launch, with mature trees and some open areas.
(b) Parcel 2: 365 North Drive has 50 feet of frontage on Cranberry Pond. Parcel is a rectangular mowed lawn area and is level. A small boat was stored on the parcel on the date of inspection.
(c) Parcel 3: 333 North Drive has 50 feet of frontage on Cranberry Pond. Parcel is a rectangular mowed lawn area and is level. Several small boats were stored on the parcel on the date of inspection.
(d) Parcel 4: 291 North Drive has 65 feet of frontage on Cranberry Pond. Parcel is a rectangular mowed lawn area, is level, and has a boat launch. A motorboat and trailer were stored on the property on the date of inspection.
(e) Parcel 5: 241 North Drive has 65 feet of frontage on Cranberry Pond. Parcel is a level rectangular mowed lawn area with one mature hardwood tree.
(f) Parcel 6: 193 North Drive has 46 feet of frontage on Cranberry Pond. Parcel is a rectangular mowed lawn area with one mature tree. Parcel has a slight decline in slope from the road to the water.
(g) Parcel 7: 147 North Drive has 60 feet of frontage on Cranberry Pond. Parcel is a level rectangular mowed lawn area. A small boat was stored on the property on the date of inspection.
(h) Parcel 8: 111 North Drive has 65 feet of frontage on Cranberry Pond. Parcel is a level rectangular mowed lawn area. A small motorboat was stored on the property on the date of inspection.
(i) Parcel 9: Unknown address on Edgemere Drive is an irregular shaped parcel with 102 feet of frontage on Lake Ontario. Parcel is level, and contains sand and rock, with some large rocks acting as a partial break wall.
(j) Parcel 10: 110 South Drive has 65 feet of frontage on Long Pond. Parcel is a level rectangular mowed lawn area with mature trees. Small boats and personal watercraft were stored on trailers on the date of inspection.
(k) Parcel 11: 130 South Drive has 52 feet of frontage on Long Pond. Parcel is a level rectangular mowed lawn area, with a dock and boat hoist.
(l) Parcel 12: 250 South Drive has 55 feet of frontage on Long Pond. Parcel is level with a short drop at the water frontage. Parcel is rectangular mowed lawn area with some trees and shrubs.
*908 (m) Parcel 13: 340 South Drive has 50 feet of frontage on Long Pond. Parcel is a rectangular mowed lawn area, and has a dock and boat hoist. There is a slight downward slope from the road to the water frontage.
(n) Parcel 14: 410 South Drive has 53 feet of frontage on Long Pond. Parcel is a rectangular mowed lawn area, and has a dock with two boat hoists. A recreational vehicle was also stored on the property on the date of inspection. There is a slight downward slope from the road to the water frontage.
(o) Parcel 15: 450 South Drive has 56 feet of frontage on Long Pond. Parcel is a level rectangular mowed lawn area, with a dock, two boat hoists, and a hoist for a personal watercraft.
(p) Parcel 16: 500 South Drive has 48 feet of frontage on Long Pond. Parcel is a rectangular mowed lawn area, and has a slight downward slope from the road to the water frontage.