[809 NYS2d 323]

In the Matter of RADISSON COMMUNITY ASSOCIATION, INC., Appellant, v DONALD J. LONG, as Assessor of Town of Lysander, et al., Respondents.

Fourth Department, February 3, 2006

### APPEARANCES OF COUNSEL

*Hancock & Estabrook, LLP*, Syracuse (*Janet D. Callahan* of counsel), for appellant.

*O'Hara & O'Connell*, Syracuse (*Stephen Ciotoli* of counsel), for Baldwinsville Central School District, respondent.

*Coulter, Ventre & Mc Carthy, L.L.P.*, Liverpool (*Robert D. Ventre* of counsel), for Donald J. Long and others, respondents.

### OPINION OF THE COURT

HAYES, J.

Petitioner is a not-for-profit corporation that owns several parcels representing common areas within a planned living community known as Radisson. Petitioner commenced these four proceedings pursuant to RPTL article 7 seeking a reduction of

the aggregate assessment to the common parcels for the tax years 1998-1999, 1999-2000, 2001-2002, and 2002-2003. We previously concluded in our decision determining prior appeals from orders entered with respect to proceedings concerning two of those tax years that petitioner could not seek a reduction in the aggregate assessments for the 1998-1999 and 1999-2000 tax years below the amounts it had requested in its complaints before respondent Board of Assessment Review (Board) (*Matter of Radisson Community Assn. v Long*, 3 AD3d 135 [2003], *lv dismissed* 4 NY3d 870 [2005]). Following the issuance of our decision, a nonjury trial was held on the four proceedings. Petitioner called as a witness an appraiser who prepared an appraisal for the four relevant tax years and gave a value of $1 for each common parcel. In accordance with our decision in the prior appeals, Supreme Court granted respondents' motion to strike that appraisal for the tax years 1998-1999 and 1999-2000 because the appraiser had valued the parcels at less than the reduction sought by petitioner before the Board. After petitioner rested without calling any additional witnesses or presenting any additional evidence, the court granted respondents' motion to dismiss the petitions for the tax years 1998-1999 and 1999-2000. Respondents called as a witness an appraiser who prepared an appraisal for the four relevant tax years. The appraiser gave the common parcels an aggregate value of $641,000, which was lower than the assessed value for the tax years 2001-2002 and 2002-2003. The court ordered respondents to correct the assessments for those tax years, and petitioner now appeals. We conclude that the order should be affirmed.

II

■ Petitioner's first contention is that the court erred in dismissing the 1998-1999 and 1999-2000 petitions. "A trial court's grant of a CPLR 4401 motion for judgment as a matter of law is appropriate where the trial court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). The court "must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in [the] light most favorable to the nonmovant" (*id.*).

Here, in accordance with our decision in the prior appeals, the court expressly stated at the outset of the trial that it would not consider any proof concerning whether the assessments for

the 1998-1999 and 1999-2000 tax years should be lower than those sought by petitioner before the Board. Petitioner's appraiser thus was not permitted to testify regarding the appraised value of the parcels in those two tax years because, pursuant to his appraisal, the parcels had only a nominal value. The only position taken by petitioner in support of the petitions for all four tax years was that the parcels had only a nominal value, and petitioner did not call other witnesses nor did it introduce any evidence suggesting otherwise. Because petitioner offered no evidence challenging the assessments for the tax years 1998-1999 and 1999-2000, it failed to rebut the presumption that the valuations by the tax assessor were valid (see generally Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d 179, 187 [1998]). We thus conclude that the court properly granted respondents' motion at the close of petitioner's proof seeking dismissal of the petitions for those tax years.

, At the close of respondents' proof, petitioner moved to reopen its proof to submit respondents' appraisal as part of petitioner's evidence. The court granted the motion, but only insofar as the appraisal concerned the petitions for the 2001-2002 and 2002-2003 tax years. The court noted that the petitions for the other two tax years had been dismissed, and thus that no proof with regard to those tax years would be admitted.

A court has discretion either to permit or to prohibit the introduction of evidence after the party offering the evidence previously rested (see Feldsberg v Nitschke, 49 NY2d 636, 643 [1980], rearg denied 50 NY2d 1059 [1980]; Orlando v Rubersi Sales, 255 AD2d 802, 804 [1998]; Lagana v French, 145 AD2d 541, 541-542 [1988]; Kennedy v Peninsula Hosp. Ctr., 135 AD2d 788, 790-791 [1987]). We conclude that the court neither abused its discretion nor improvidently exercised its discretion in denying petitioner's motion to reopen the proceedings with respect to the petitions for the 1998-1999 and 1999-2000 tax years (see Orlando, 255 AD2d at 804; Shapiro v Shapiro, 151 AD2d 559, 560 [1989]). This is not an instance in which a party is seeking "to reopen and supply defects in evidence which have inadvertently occurred" (Matter of Dutchess County Dept. of Social Servs. v Shirley U., 266 AD2d 459, 460 [1999]). It is well established that petitioner had the burden of establishing that the valuation of the tax assessor was not valid, yet petitioner offered no evidence to meet that burden for the 1998-1999 and 1999-2000 tax years. Nor is this an instance in which petitioner immediately moved to reopen its proof after respondents moved

for a directed verdict and before respondents presented their proof (*see e.g. Frazier v Campbell*, 246 AD2d 509, 510 [1998]; *Lagana*, 145 AD2d at 541-542; *Kennedy*, 135 AD2d at 791). "While it may be appropriate to reopen a case to enable a party to present additional evidence prior to the presentation of the adversary's evidence . . . , an untimely motion to reopen should be denied" (*Shapiro*, 151 AD2d at 560-561). Here, petitioner waited until the close of respondents' case to move to reopen and "did not provide an explanation for [its] failure to act more expeditiously" (*Orlando*, 255 AD2d at 804). As noted by respondents, petitioner had a copy of the report of respondents' appraiser for a year prior to the trial, and it could have submitted that appraisal as part of its case-in-chief. Instead, petitioner maintained its position that the properties had only a nominal value and nothing more. Under these circumstances, we cannot agree with petitioner that the court should have allowed it to reopen its proof and, upon doing so, should have reconsidered its decision granting respondents' motion to dismiss the petitions for the tax years 1998-1999 and 1999-2000.

## III

■ Petitioner's second contention is two-fold. Petitioner contends that the value of the subject parcels is already included in the value of the dominant estates, and petitioner thus contends that assigning the parcels more than a nominal value would result in unconstitutional double taxation. We must examine the ownership of and rights to the common parcels in order to address petitioner's second contention.

Pursuant to the terms of the deeds to the parcels at issue herein, petitioner, until December 13, 2013 or such later date as the terms thereof may be extended, was restricted to devoting the property primarily for the common use and enjoyment of the owners and residents of Radisson in accordance with the Declaration of Protective Covenants, Conditions and Restrictions (Radisson Declaration). Those covenants ran with the land. All homeowners and residents of Radisson are members of petitioner association and are required to abide by the terms of the Radisson Declaration. Article II, section 3 (C) of the Radisson Declaration provides that every resident and owner has a right and easement of enjoyment in and to all common property. Such rights and easements are subject to, inter alia, the rights of petitioner to promulgate rules and regulations relating to the operation and maintenance of the common property, to suspend

the right and easement of any owner, to grant easements to any municipality or other governmental body, and to transfer any interest in the common property to any municipality or other governmental body upon a two-thirds vote of the membership in favor of such transfer. The approximately 2,300 homeowners in Radisson were required to pay an annual assessment to petitioner.

The common property at issue consists of the Aspen House, which is on 3.65 acres of land and is used as a community center and nursery/daycare center; the Oberon Center, which is on 3.6 acres of land and has a swimming pool, tennis courts, and other facilities, including the Radisson offices; a storage/maintenance facility on 6.79 acres of land; and the remaining parcels, which span 254.01 acres of vacant land and are used as common recreation land and are improved with walking trails and other amenities.

At trial, petitioner failed to establish that the assessment of the common property resulted in unconstitutional double taxation. Petitioner's reliance on *People ex rel. Poor v Wells* (139 App Div 83, 85-87 [1910], *affd sub nom. People ex rel. Poor v O'Donnel,* 200 NY 519 [1910]) thus is misplaced, because in that case the assessments of the dominant estates included the value of the common parcels. Indeed, petitioner's appraiser expressly testified that the Radisson homes had no enhanced value based on their easements in the common parcels (*see Matter of Mountain Meadows Campers Assn. v Pilkington,* 86 NY2d 849, 850 [1995]).

Petitioner also failed to establish that the common parcels herein have either no value or only a nominal value.

> "It is possible that a parcel is so interwoven with a dominant estate that it has no extrinsic value that is available for tax purposes. If, however, it is shown that a servient parcel has substantial value, the land can be taxed despite its relationship to a dominant estate owned by a member of a community development" (*Matter of Property Owners of Sleepy Hollow Lake v Town of Coxsackie Assessment Bd. of Review,* 121 AD2d 836, 838 [1986], *appeal dismissed* 68 NY2d 911 [1986]).

The common parcels herein can be said to have either no value or a nominal value for tax purposes only if they have little or no beneficial use for their owner (*see Grasser v Graham,* 97 Misc 2d 417, 419 [1978]; *see generally Matter of City of New York,* 269

NY 64, 70 [1935]). Thus, "[t]he ultimate question in each case is not whether the land taken is burdened by servitude, but rather [the issue is] the value of the land for any use consistent with the burden upon it" (*City of New York*, 269 NY at 70).

The case of *City of New York* is instructive in resolving this issue. That case involved condemnation proceedings brought by the City of New York (City) to acquire a waterfront parcel that was owned by a property owners' association (*id.* at 67). The parcel was subject to easements in favor of several hundred property owners, and the City took the land free from any of the easements (*id.* at 67-69). The Court of Appeals determined that the value of the fee, together with the easements, was substantial because the property owners had the right to use the beach in common with a limited group of people, rather than all members of the public (*id.* at 70-71). In deciding whether the owner of the fee should be compensated, as opposed to the owners of the dominant parcels, the Court examined the nature of their relationship. Every lot owner was a member of the association that owned the fee, and the Court thus determined that "the [association] is a device used by the owners of the dominant tenements to hold, and jointly manage and control, the fee in which they have a common right of enjoyment" (*id.* at 73). The Court determined that, "[s]o long as the title remains in the [association], and the [association] continues to use the land in the manner it has heretofore used it, those who own the dominant tenements enjoy under the [association's] by-laws the same rights which they might claim under their easements, and the easements have little or no value" (*id.* at 73-74). According to the decision of the Court of Appeals, "the easements, for practical purposes, had become merged in the membership rights[, and] . . . the owners of the dominant tenements [were] damaged primarily through the destruction of their membership rights" (*id.* at 74-75). The Court thus determined that "[t]he damage to the [association] by the taking of the land is the value of the use of that land by the [association] for the benefit of those accorded membership rights therein" (*id.* at 75).

Similarly, the common parcels owned by petitioner herein have a value to petitioner that may be quantified, and the value of the easements in the common parcels held by the dominant estates was reflected in the homeowners' membership rights in petitioner association. Petitioner has a beneficial interest in the common parcels because the parcels benefit its membership (*see*

*generally Grasser*, 97 Misc 2d at 420 ["a subservient parcel has substantial value where, as here, the owners of the easements are automatically members of a corporation owning the property sought to be taxed"]). In addition, pursuant to the Radisson Declaration, petitioner enjoys rights such as the right to promulgate rules and regulations relating to the operation and maintenance of the common property, the right to sanction homeowners by suspending their rights and easements in the common parcels, the right to grant easements to any municipality or other governmental body, and the right to transfer any interest in the common property to any municipality or other governmental body upon a two-thirds vote of the membership in favor of such transfer. Moreover, petitioner charges user fees to both its members and members of the general public for the use of some of the facilities on the common parcels, such as the nursery/daycare center.

We note in addition that the assessment process is simplified by imposing the tax burden on petitioner rather than the individual homeowners. Were we to agree with petitioner that the assessor should include the value of the common parcels in the dominant estates, the assessor would then be required to allocate the value of the common parcels among approximately 2,300 different homeowners in Radisson. If homeowners disagreed with the value placed on the common parcels, the Board could conceivably be faced with a vast number of complaints based on the same parcels. Pursuant to the Radisson Declaration, petitioner already imposes an annual assessment on every homeowner, and we conclude that petitioner can more efficiently allocate to the dominant parcels the tax burden imposed on the common parcels.

## IV

Accordingly, we conclude that the order should be affirmed.

HURLBUTT, J.P., SCUDDER, GORSKI and GREEN, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed without costs.