Submitted on the record May 5, judgment of Tax Court affirmed in part and vacated and remanded in part July 27, 2006

### Bhagwati P. PODDAR,
*Appellant,*

*v.*

### DEPARTMENT OF REVENUE,
*Respondent,*
*and*

### CLATSOP COUNTY ASSESSOR,
*Intervenor-Respondent.*

(TC 4689; SC S52877)

139 P3d 962

Bhagwati P. Poddar, Astoria, filed the brief *pro se*.

Heather Reynolds, Clatsop County Counsel, Astoria, filed the brief for intervenor-respondent.

No appearance for respondent Department of Revenue.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

In this property tax case, appellant Bhagwati Poddar (taxpayer) asserts that the tax assessment of his real property for the tax years 1994-95 and 1995-96 erroneously failed to take into account the effect of governmental restrictions that applied to that property. Following trial, the Oregon Tax Court upheld the assessment. Taxpayer appealed to this court pursuant to ORS 305.445. For the reasons set forth below, we affirm in part and vacate and remand in part the judgment of the Tax Court.

We take the following facts from the record. Taxpayer and his spouse purchased rural property in Clatsop County (the county) in 1974. That property contained a house (the old house) and other buildings. In 1993, the county split the property into two tax accounts. The old house and other buildings were located on one five-acre parcel, which was located in a Residential-Agriculture-5 zone, under Clatsop County Land and Water Development and Use Ordinance No. 80-14 (Clatsop County Ordinance No. 80-14), § 3.220. Section 3.228 of that ordinance permits only one single family dwelling on a five-acre parcel.

In 1992, taxpayer obtained a development permit from the county to build a new residence to be constructed on the same five-acre parcel as the old house. The county conditioned that permit on taxpayer's agreement to remove the old house within six months of occupancy or completion of the new house. Taxpayer thereafter began construction of the new house.

In June 1994, taxpayer received a certificate of occupancy for the new house. On July 1, 1994, Legg, an appraiser for the county, visited the property to inspect the new house, but taxpayer refused Legg entry. Taxpayer and Legg discussed the status of the old house. Legg asked if the old house still had plumbing and heat, and taxpayer replied that it did. Legg told taxpayer that those were among the criteria used to classify structures. Presuming that taxpayer would convert the house into storage and cap the plumbing, Legg reduced the assessed value of the old house.

On July 13, 1994, the county wrote to taxpayer, stating that it had been advised that the new house had been completed on March 30, 1994, and informing taxpayer that he had until September 30, 1994, to remove the old house. On July 25, 1994, taxpayer informed the county that the old house "ha[d] been converted to a storage building effective June 27, 1994."[1] In response, the county informed taxpayer that he needed to obtain a permit for a storage building or completely remove the old house by September 30, 1994. Taxpayer did neither. Thereafter, the county assessed the value of taxpayer's real property at $411,240 for the 1994-95 tax year.

By 1996, taxpayer had not yet completed demolition of the old house. In May 1996, the county sent another letter and set forth the process to bring the old house into compliance for use as a storage building. The county stated that if those steps were not taken, the county would proceed with an enforcement hearing. Again, taxpayer neither complied with the requirements to convert the old house to a storage building nor immediately removed the old house from his property. As a result, the county ordered taxpayer to pay $7,500 for violating Clatsop County Ordinance No. 80-14. The county also assessed taxpayer's real property for the 1995-96 tax year at $458,380.

Taxpayer allowed no county appraiser to inspect his property until January 1997, after the county obtained a court order. During the January 1997 inspection, an appraiser inspected and photographed the old house. The county did not then change the assessed value of the old house. In June 1997, the county again inspected the old house. At that time, taxpayer had demolished the old house to the satisfaction of the county. The county thereafter retroactively reduced the value of the old house to zero for the 1996-97 tax year.

Taxpayer challenged the county's assessment of the five-acre parcel for the 1994-95 and 1995-96 tax years in the Tax Court. Taxpayer claimed that the county should have

---

[1] Taxpayer admits that that statement was false and that he had made that statement to gain more time to demolish the old house.

assessed the old house on that property as having no taxable value for those tax years. The Magistrate Division rejected taxpayer's claims and upheld the county's assessment for both tax years. Taxpayer then filed a complaint with the Regular Division of the Tax Court.[2] Taxpayer alleged that the real market value of the old house should have been zero for both tax years.

Taxpayer moved for summary judgment. The Tax Court denied that motion and held that, because the parties disputed the value of the old house, there was a triable issue of fact. Following trial, the Tax Court issued an opinion upholding the county's assessment. Specifically, the Tax Court held that taxpayer had failed to satisfy his burden of proving that the old house had no value for the tax years 1994-95 and 1995-96. *Poddar v. Dept. of Rev.*, 18 OTR 324 (2005).[3] The Tax Court explained that taxpayer's theory was "all or nothing"—that is, because taxpayer's only theory was that the old house should be valued at zero, if taxpayer failed to prove that the old house had no value, the only alternative was to uphold the county's assessed value. *Id.* at 329. The Tax Court noted that, although the old house could not be used as a dwelling, the county had suggested two alternatives that allowed the house to have value: use as a storage structure and sale of its component parts prior to demolition.[4] *Id.* at 330. Because of those alternative uses, the Tax Court concluded that the old house had some taxable value and upheld the county's assessment for the 1994-95 and 1995-96 property tax years. *Id.* at 332. Taxpayer appealed to this court pursuant to ORS 305.445.

---

[2] Clatsop County intervened in the Tax Court as the real party in interest, and the Department of Revenue tendered its defense to the county. The Department of Revenue did not participate in proceedings before this court.

[3] After publishing its opinion, the Tax Court amended its opinion by deleting one sentence. That deletion does not alter the analysis or outcome. We therefore cite to the published opinion.

[4] The Tax Court noted that, because taxpayer did not allow the county's appraisers to inspect the old house during the tax years at issue, any reductions in value—as opposed to elimination of all value—that might have resulted are unknown. *Poddar*, 18 OTR at 331. The Tax Court also noted that the appraiser had decreased the value of the old house to a certain extent because he assumed that taxpayer would change the use of the old house. *Id.*

Taxpayer had the burden of proof before the Tax Court to come forward with a preponderance of evidence in support of his position. ORS 305.427 (2005).[5] Because taxpayer filed this action in the Tax Court on June 18, 2004, we review the Tax Court's decision for "errors or questions of law or lack of substantial evidence in the record." ORS 305.445 (2005); *Delta Air Lines, Inc. v. Dept. of Rev.*, 328 Or 596, 603, 984 P2d 836 (1999) (concluding that that standard of review applies to cases filed in Tax Court after September 1, 1997).

■ Several statutes apply to the valuation and taxation of real property. ORS 308.205(1) defines real market value as follows:

"Real market value of all property, real and personal, as the property exists on the date of assessment, means the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion from an informed buyer acting without compulsion, in an arm's-length transaction during the fiscal year."

The "date of assessment" is July 1 of each year. ORS 308.210(1). ORS 308.205(2) provides, in part:

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with the following:

"* * * * *

"(c)   If the property has no immediate market value, its real market value is the amount of money that would justly compensate the owner for loss of the property.

"(d)   If the property is subject to governmental restriction as to use on the assessment date under applicable law or regulation, real market value shall not be based upon sales that reflect for the property a value that the property would have if the use of the property were not subject to the restriction unless adjustments in value are made reflecting the effect of the restrictions[.]"

---

[5] Unless otherwise stated, we cite to the 1993 edition of the Oregon Revised Statutes, which is applicable to the 1994-95 tax year. The 1995 edition of the Oregon Revised Statutes, which is applicable to the 1995-96 tax year, contains no changes to the relevant statutes.

ORS 308.235 governs valuation of land. Paragraph (1)(a) of that statute provides, "Taxable real property shall be assessed by a method which takes into consideration: (a) The applicable land use plans, including current zoning and other governmental land use restrictions[.]"

Taxpayer contends that the county's assessment violated ORS 308.205(2)(c) and (d) and ORS 308.235(1). Taxpayer asserts that, because the county did not assign a real market value of zero to the old house for the tax years 1994-95 and 1995-96, the county failed to take into account applicable government restrictions as to use, in violation of ORS 308.205(2)(d) and ORS 308.235. Additionally, taxpayer contends that the Tax Court erred in failing to conclude that the old house had no "immediate market value" under ORS 308.205(2)(c). Finally, taxpayer argues that the Tax Court erred in awarding costs to the county without holding a hearing.

As noted, the county's ordinance permitted taxpayer to have only one single family dwelling on his five-acre parcel. Clatsop County Ordinance No. 80-14, §§ 3.224 & 3.228. Taxpayer contends that the county ignored that restriction when it assessed his property for the 1994-95 and 1995-96 tax years. Taxpayer argues that, following the issuance of the certificate of occupancy for the new house, the old house was not legally usable for any purpose. Taxpayer contends that he could not have used the old house as a storage building because he had not acquired a permit for a storage building. For those reasons, taxpayer asserts, the assessor should have concluded that the old house had zero taxable value under ORS 308.205(2)(c) and (d).

In response, the county argues that taxpayer failed to satisfy his burden of proof to show that the old house had no value. Additionally, the county asserts that the government restrictions on the property were not so limiting that the property had no value. Instead, the county contends, the restrictions merely disallowed the building's use as a dwelling and required taxpayer to obtain a permit to use the old house as a storage unit. The fact that taxpayer chose not to obtain that permit did not make the property useless or valueless. The county further argues that, even if taxpayer were

correct that the old house had no value as a building, the old house's component parts had value. The county also notes that taxpayer did not allow county appraisers access to the property during the tax years in dispute. Therefore, even if the value of taxpayer's property required adjustment, the assessor had no information on which to base such an adjustment.[6]

For the reasons that follow, we agree with the county and the Tax Court that the taxpayer did not satisfy his burden to show that the old house had no value. ORS 305.427 places the burden of proof squarely on the party seeking affirmative relief; here, that party is the taxpayer, who "has the burden to show that [his] approach to valuation best reflects the property's real market value." *STC Submarine, Inc. v. Dept. of Rev.*, 320 Or 589, 597, 890 P2d 1370 (1995) (internal quotation marks omitted). Here, taxpayer has not presented any evidence—beyond his own argument and assertions— that the old house was worth nothing during the tax years at issue.

Relying on this court's decisions in *Bayridge Assoc. Ltd. Partnership v. Dept. of Rev.*, 321 Or 21, 892 P2d 1002 (1995), and *Tualatin Development v. Dept. of Rev.*, 256 Or 323, 473 P2d 660 (1970), taxpayer argues that he has submitted ample evidence showing that the old house had no value because there existed no legal use for the old house after completion of the new house. Neither *Bayridge* nor *Tualatin Development* assist taxpayer.

In *Bayridge*, 321 Or at 27-31, this court construed the phrase "governmental restriction as to use," as that phrase is used in ORS 308.205(2)(d). The dispute in that case concerned the valuation of two apartment complexes with respect to which the property owner had participated in a federal low-income housing program that imposed tenant and rent limitations in exchange for tax credits. *Id.* at 24. This court held that participation in such a program constituted a "governmental restriction as to use" of the property,

---

[6] As noted, the assessor did make an adjustment in value based on taxpayer's representation that the plumbing in the old house would be capped in conjunction with a change in the structure's use.

despite the fact that the property owner had chosen to participate in the program and had received some financial benefit from participating in the program. *Id.* at 28-29 (quoting ORS 308.205(2) (1989)).

Taxpayer relies on the following passage from *Bayridge*:

"Even if taxpayers wanted to use the properties for nonresidential purposes (such as commercial purposes), and even if those uses were permitted by applicable zoning laws, the governmental restrictions placed on those properties would inhibit such a use. Those limits on what taxpayers may *do* with their properties, resulting from taxpayers' participation in the section 42 program, constitute 'governmental restriction[s] as to use.' "

*Id.* at 30 (quoting ORS 308.205(2) (1989) (emphasis in original)). Taxpayer contends that, here, even if he had wanted to use the old house for storage and that use had been permitted by applicable zoning laws, the development permit that he obtained in 1992 prohibited any such use unless he applied for a further permit. Therefore, taxpayer argues, the limit on taxpayer's use of his property constituted a governmental restriction as to use. Taxpayer's argument misses the point. The county does not dispute that governmental restrictions—including zoning laws and permit requirements—applied to the old house. Those governmental restrictions did not, however, prohibit all uses of the old house or render it valueless. As the Tax Court explained, the old house could, following permit approval, be used as a storage building or sold for component parts.

In *Tualatin Development*, 256 Or at 324, the Tax Court had held that certain property had no value for property tax purposes, and the Department of Revenue appealed. The taxpayer in that case owned a golf course in a residential development. *Id.* The local planning commission had placed restrictions on the residential development, requiring recreational open areas within the development. *Id.* at 325. The taxpayer constructed a golf course in the required open area, but it had not been profitable. *Id.* at 326. The taxpayer could not sell the land free of the applicable zoning restriction or use it in any way other than as open space. *Id.* at 327. The

parties agreed that the property had no immediate market value; therefore, " 'its true cash value [would] be the amount of money that would justly compensate the owner for the loss of the property.' " *Id.* at 326 (quoting earlier version of ORS 308.205). The question before this court was the proper valuation of the golf course, given that the use of the land was "so severely restricted that its owner derives no benefit from the ownership" of the land. *Id.* at 329. Given those considerations, this court agreed with the Tax Court that the taxpayer's property had no taxable value during the tax years at issue. *Id.* at 331.

Taxpayer contends that his property was similarly restricted. We disagree. Although the county ordinance did not permit him to use the old house as a dwelling, that ordinance did provide permissible alternative uses. Taxpayer asserts, however, that possible use of the dwelling as a storage building cannot be relied upon in determining value because, as of the assessment date, the old house was not *legally* usable as a storage building. Again, taxpayer's argument fails. Unlike in *Tualatin Development*, a purchaser of the property here could make beneficial use of the old house. The fact that such a purchaser would have to pay for permits may lessen the market value of the property, but would not necessarily render it completely without taxable value. Permit requirements are merely a hurdle to certain types of use of the property, not a blanket prohibition of any beneficial use. We agree with the Tax Court's conclusion that taxpayer failed to demonstrate by a preponderance of the evidence that the old house had no value and therefore affirm that part of the Tax Court's decision.

■ Taxpayer raises one final issue concerning the Tax Court's award of costs. Taxpayer contends that the Tax Court failed to follow the procedure required in *former* Tax Court Rule (TCR) 68 C(4)(c)(i) (2005), which provided:

"If objections are filed in accordance with paragraph C(4)(b) of this rule, the court, without a jury, shall hear and determine all issues of law and fact raised by the statement of attorney fees or costs and disbursements and by the objections. The parties shall be given a reasonable opportunity to present evidence and affidavits, declarations and other evidence relevant to any factual issue."

*Former* TCR 68 C(4)(c)(i) (2005), *renumbered as* TCR 68 C(2)(c)(i) (2006). Taxpayer filed objections to the county's cost bill on the issue of photocopy costs. The county waived appearance. Thereafter, the Tax Court held no hearing but awarded costs to the county. The judgment did not address taxpayer's objections. Taxpayer claims that he is entitled to the procedure outlined in *former* TCR 68 C(4)(c) (2005), and requests remand for further proceedings under that rule.

Taxpayer is correct that *former* TCR 68 C(4)(c)(i) (2005) required the Tax Court to conduct a hearing and allow the parties to present evidence regarding costs, where objections have been filed. It is undisputed that the Tax Court held no such hearing here. Nothing in the record indicates that taxpayer waived his right to a hearing. We therefore vacate the Tax Court's award of costs and remand for a hearing on taxpayer's objections.

The judgment of the Tax Court is affirmed in part and vacated and remanded in part.