IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

WILLIAM JOHN KUHN )
and MARTHA LEIGH KUHN, )
)
        Plaintiffs, ) TC-MD 150093D
)
    v. )
)
DESCHUTES COUNTY ASSESSOR, )
)
        Defendant. ) **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered January 29, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal the real market value of property identified as Account 163467 (subject property) for the 2014-15 tax year. A trial was held in the Oregon Tax Courtroom on November 2, 2015, in Salem, Oregon. William John Kuhn (Kuhn) appeared on behalf of Plaintiffs. Eric Sexton (Sexton), Kuhn, Paul Blikstad, Andrew Mathers, and Nick Lelack testified on behalf of Plaintiffs. John Laherty appeared on behalf of Defendant. Kuhn and Sexton testified on behalf of Defendant. Plaintiffs' Exhibits 5, 8, and 15 were received without objection. Plaintiffs' Exhibits 2, 3, 10, 17, 18, 19, and 20 were received over Defendant's objection. Plaintiffs' Exhibits 1, 4, 6, 7, 9, 11, 12, 13, 14, 16, 33 and 34 were not received due to Defendant's relevancy objection. Plaintiffs' Exhibit 29 was received over Plaintiffs' objection. Defendant's Exhibits B, C, D, E, F, and G were received without objection. Defendant's Exhibit I was received over Plaintiffs' objection. Defendant's Exhibit Q was not received due to Plaintiffs' relevancy objection.

/ / /

## I. STATEMENT OF FACTS

Although this case is about the 2014-15 tax year, it is helpful to recount a brief history of the subject property to better understand the issues presented in this case.

In 1980, Plaintiffs' predecessor-in-interest, John Barton (Barton), created a "cluster development" for three lots on an approximately 43-acre parcel in the Tumalo Winter Deer Range. (Ptfs' Ex 8.) Ordinarily, the required lot size in the Tumalo Winter Deer Range was 40 acres. (Ptfs' Ex 8 at 2.) The application for a conditional use permit to create the cluster development was approved by a Deschutes County Hearings Officer on April 2, 1980, with a condition that "[p]rior to the sale of any lot a written agreement shall be recorded which establishes an acceptable homeowners association or agreement assuring the [maintenance] of common property in the partition." (Ptfs' Ex 8 at 3.) The cluster development plan created Tax Lots 100, 200, and 300. (Def's Ex M at 2.) Tax Lots 100 and 200 are 4.3 acre parcels that are subject to development. *Id*. Tax Lot 300 is a 34.4 acre parcel that was to be common property and remain undeveloped. *Id*. Barton did not record an agreement for a homeowners association (HOA) or a maintenance agreement prior to selling the properties. (Def's Ex B.)

Kuhn testified that Plaintiffs purchased the subject property (Tax Lot 200), and a one-half interest in Tax Lot 300, in July 1987. According to Kuhn, Plaintiffs' neighbors, Jeff and Pat Dowell (Dowells), subsequently purchased Tax Lot 100, and the other one-half interest in Tax Lot 300. On June 18, 1987, the month before Plaintiffs purchased their property, Plaintiffs' application for a lot line adjustment was approved by the Deschutes County Community Development Department (CDD). (Ptfs' Ex 8 at 5.) On June 19, 1987, the CDD mailed Plaintiffs a letter stating "we have approved your lot line adjustment application subject to the following condition: 1. Prior to the issuance of a building permit, the deed restrictions to the

Cluster Development on CU-80-22 shall be recorded with the Desc[h]utes County Clerk to run with the parcels." (Ptfs' Ex 8 at 6.) In November 1988, Defendant approved Plaintiffs' Landscape Management Plan and stated in a letter dated November 14, 1988, "[a]s a part of your building permit please bring in a copy of the Home-owners Maintenance Agreement on the common property to the west of you." (Def's Ex C.) Kuhn testified that the County delayed in recording the deed restrictions until after the Dowells purchased their property. He also testified that the County issued building permits to Plaintiffs and the Dowells in the mistaken belief that the Landscape Management Plan represented a maintenance agreement, even though neither a HOA nor maintenance agreement had been filed.

Kuhn testified that Plaintiffs and the Dowells attempted to create a HOA or maintenance agreement for Tax Lot 300, but they spent years in deadlocked negotiations.[1] In 2001, Plaintiffs sued the Dowells in Circuit Court seeking, in part, a mandatory injunction to compel the Dowells to enter into a HOA or maintenance agreement for Tax Lot 300. (Def's Ex E.) In July 2002, the Circuit Court ordered the Dowells "to enter into the required 'home owners association or agreement assuring the maintenance of common property' as set forth in the conditions required with respect to the conditional use permit." (Def's Ex F at 3.)

In 2009, the Dowells applied for a building permit to remodel their home. (Pfts' Ex 8 at 15.) Plaintiffs opposed the permit and the matter was appealed through the planning process to the Deschutes County Board of Commissioners (Board). (Def's Ex M.) On February 24, 2010, the Board issued a decision that agreed with Plaintiffs and denied the remodel permit. *Id*. The Board found that when Tax Lots 100, 200 and 300 were sold, no HOA or agreement assuring the maintenance of common property in the partition had been recorded, and that the previous

---

[1] In the Court's opinion it would not aide in the understanding of this decision to recount all of the long history of disputes and grievances between the parties.

building permits should not have been issued. (Pfts' Ex 8 at 15.) The Board found that dwellings on Lots 100 and 200 "are not lawfully established until a written agreement is recorded that establishes an acceptable homeowners association or agreement assuring the maintenance of common property in the partition." (Pfts' Ex 8 at 16.) Kuhn testified that in 2014, County Counsel attempted to assist Plaintiffs and the Dowells in negotiating a HOA or maintenance agreement, but those efforts were unsuccessful. Kuhn testified that no HOA or maintenance agreement has ever been recorded by the parties.

Kuhn testified that he solicited the opinion of local real estate brokers and lenders regarding the value of the subject property. Several real estate brokers opined that the subject property's value was affected by the shared maintenance issue and lack of HOA agreement. (Pfts' Ex 10 at 1, 4, 7, 8.) Plaintiffs obtained letters from real estate lenders indicating they would not lend on the subject property without a recorded HOA or maintenance agreement. (Pfts' Ex 10 at 2-3.)

Kuhn argued that the subject property's value was reduced because the requirement for recording a HOA or agreement assuring the maintenance of common property was not completed and the Board ruled that their property was not lawfully established. Kuhn stated that the County's requirements constituted a "governmental restriction as to use" of the property and, pursuant to ORS 308.205(2)(d), the real market value of the subject property should be reduced. Kuhn further argued that Plaintiffs were unable to easily remedy the situation because, for decades, they have been unable to reach an agreement with the Dowells.

Sexton testified that the requirement to record a HOA or maintenance agreement was a condition precedent to the sale of the properties, and to the issuance of building permits, and was not a "government restriction as to use" of the property. In the alternative, Sexton argued any

governmental restriction on the use of the subject property was negligible because Plaintiffs could reach an agreement with their neighbor quickly and at little or no cost. Sexton testified that if he had appraised the subject property he would not have reduced the real market value based on any alleged governmental restrictions.

The parties stipulated in writing that, for purposes of this tax appeal, the real market value of the subject property as of January 1, 2014, without consideration of any alleged governmental restrictions, is $266,970. (Stip at 1.)

## II. ANALYSIS

A.    *Real Market Value and Burden of Proof*

The issue before the court is the real market value of the subject property for the 2014-15 tax year. In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[2] ORS 308.205(1) defines real market value as:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arms-length transaction occurring as of the assessment date for the tax year."

For the 2014-15 tax year, the assessment date was January 1, 2014. ORS 308.007; ORS 308.210(1).

Because Plaintiffs are the party seeking affirmative relief in this appeal, they have the burden of proof and must prove, by a preponderance of the evidence, that there is an error in the real market value appearing on the assessment and tax rolls. ORS 305.427; *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260,

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

265, 798 P2d 235 (1990). Taxpayers cannot sustain their burden of proof merely through noting errors in Defendant's position, but must instead "provide competent evidence of the [real market value] of their property." *Poddar v. Dept of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D at 7 (Mar 13, 2012).

B.      *Plaintiff's Real Market Value Evidence*

Plaintiffs argued for a reduction in real market value of the subject property due to an alleged governmental restriction as to its use. They cited ORS 308.205(2) which states, in pertinent part:

> "(d) If the property is subject to governmental restriction as to use on the assessment date under applicable law or regulation, real market value shall not be based upon sales that reflect for the property a value that the property would have if the use of the property were not subject to the restriction unless adjustments in value are made reflecting the effect of the restrictions."

Plaintiffs asserted that their use of the property was limited by the lack of a recorded HOA or maintenance agreement and a decision by the Board, which determined the property was not "lawfully established." Plaintiffs contended that until a HOA or maintenance agreement is recorded, the subject property has a diminished value. The court agrees. In weighing the evidence on the issue of a governmental restriction, the court is persuaded by the testimony of Kuhn and the supporting documentation, especially Exhibit 10, that the value of the property may be affected by the lack of a HOA.

/ / /

This case is similar to *Poddar v. Dept. of Rev.* 341 Or 186, 139 P3d 962 (2006). In *Poddar*, the taxpayer obtained approval to construct a new home on his property, and when completed, was required to remove the old house. *Id*. at 188-196. The taxpayer built the new home but did not remove the old house or seek a permit to change its permitted use as storage. *Id*. at 188. The defendant included the unpermitted structure in its property assessment. *Id*. at 189. The taxpayer alleged the old house had no value and did not present any evidence of value at trial. *Id*. at 190. The Supreme Court held that even though the old house was unpermitted, that fact did not establish that it had no value. *Id*. at 195. Since the taxpayer in *Poddar* did not present evidence of value during the trial, the taxpayer lost. In this case, as in *Poddar,* Defendant has determined the subject property is not legal. Unlike the taxpayer in *Poddar*, Plaintiffs did not allege the property had no value; however, at trial, Plaintiffs offered no credible or persuasive evidence that the value was different than the value stipulated by the parties without consideration of the governmental restriction. This court cannot simply assign a value to property in the absence of persuasive evidence on the issue. *See Danielson,* TC-MD 110300D at 7 (noting the types of evidence the court accepts as competent evidence).

The court finds no basis for changing the real market value of the subject property to a value other than the value stipulated by the parties.

## III.  CONCLUSION

After carefully considering the testimony and evidence, the court concludes that Plaintiffs have failed to establish by a preponderance of the evidence that the real market value of the property identified as Account 163467 for the 2014-15 tax year, should be reduced from the stipulated figure of $266,970. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that, as stipulated by the parties, the real market value of Account 163467 was $266,970 for tax year 2014-15.

Dated this ____ day of February 2016.

_____
RICHARD DAVIS
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.***

***This document was filed and entered on February 17, 2016.***